Revised May 4, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-31354

_____


SANDRA SPRAGIS FLOWERS


                              Plaintiff - Appellee

      v.


SOUTHERN REGIONAL PHYSICIAN SERVICES INC.


                              Defendant - Appellant

_____

          Appeal from the United States District Court
            for the Middle District of Louisiana
_____
                      March 30, 2001

Before KING, Chief Judge, and HIGGINBOTHAM and DUHÉ, Circuit
Judges.

KING, Chief Judge:

     Defendant-Appellant Southern Regional Physician Services,

Inc. appeals from the district court's final judgment on a jury

verdict awarding Plaintiff-Appellee Sandra Spragis Flowers

damages under the Americans with Disabilities Act for disability-

based harassment and from the district court's subsequent denial

of Defendant-Appellant's renewed motion for judgment as a matter of law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellee Sandra Spragis Flowers was employed by Defendant-Appellant Southern Regional Physician Services, Inc. ("Southern Regional") from September 1, 1993 to November 13, 1995. Flowers worked primarily as a medical assistant for Dr. James Osterberger, a physician at Southern Regional.[1] In early March 1995, Margaret Hallmark, Flowers's immediate supervisor, discovered that Flowers was infected with the Human Immunodeficiency Virus ("HIV"). Flowers was terminated from Southern Regional in November 1995.

On October 6, 1996, Flowers filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Southern Regional had engaged in unlawful discrimination because of Flowers's status as a disabled person. After receiving the requisite Right to Sue Letter from the EEOC, Flowers filed suit in federal court asserting a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213

---

[1] Flowers actually began her employment as a medical assistant for Osterberger in November 1989, when the staffing and support services for the hospital at which Osterberger was a physician were provided by Medical Associates. Sometime in August 1993, Southern Regional entered into a contract with the hospital to provide staffing and support services. On September 1, 1993, Southern Regional replaced Medical Associates as Flowers's employer.

(1995).  Flowers claimed both that she was terminated because of her disability and also that she was subjected to "harassing conduct" designed to "force [her] from her position or cast her in a false light for the purpose of terminating her because of her HIV status."

Flowers's claims proceeded to trial by jury on December 8, 1998.  At the close of Flowers's case and then again at the close of all of the evidence, Southern Regional moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure ("Rule 50(a) motions").  The district court denied both Rule 50(a) motions.  After deliberation, the jury determined (1) that Flowers's disability was not a motivating factor in Southern Regional's decision to terminate her employment, but (2) that Flowers was subjected to disability-based harassment that created a hostile work environment.  As a result of its finding of a hostile work environment, the jury awarded Flowers $350,000.  The district court reduced the amount to $100,000 pursuant to 42 U.S.C. § 1981a(b)(3)(B) (1994).  The district court then entered final judgment in her favor on July 21, 1999.  Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Southern Regional renewed its motion for judgment as a matter of law ("Rule 50(b) motion").  On November 22, 1999, the district court denied the Rule 50(b) motion.

Southern Regional timely appealed.

## II. AVAILABILITY OF A CAUSE OF ACTION UNDER THE ADA FOR

## DISABILITY-BASED HARASSMENT

In ruling on Southern Regional's Rule 50(b) motion, the district court concluded that the ADA encompasses a cause of action for disability-based harassment. Southern Regional contends, however, that no cause of action under the ADA exists, arguing only that this court had the opportunity to extend this circuit's harassment jurisprudence to such claims in McConathy v. Dr. Pepper/Seven Up Corp., but found it unnecessary to do so. See 131 F.3d 558, 563 (5th Cir. 1998) ("This case should not be cited for the proposition that the Fifth Circuit recognizes or rejects an ADA cause of action based on hostile environment harassment."). We find Southern Regional's argument to be unpersuasive and agree with the district court that the ADA embraces claims of disability-based harassment.

To date, none of our sister courts of appeals has affirmatively acknowledged that a cause of action for disability-based harassment exists under the ADA.[2] Nonetheless, existing decisions of the courts of appeals that have considered this issue indicate that a claim of disability-based harassment should

---

[2] In Keever v. Middletown, the Court of Appeals for the Sixth Circuit appears to have implicitly recognized an ADA hostile work environment claim, albeit with no analysis. See 145 F.3d 809, 813 (6th Cir. 1998).

be cognizable under the ADA.  See Silk v. City of Chicago, 194 F.3d 788, 803 (7th Cir. 1999); Walton v. Mental Health Ass'n, 168 F.3d 661, 666 (3d Cir. 1999) ("This framework indicates that a cause of action for harassment exists under the ADA."); Miranda v. Wis. Power & Light Co., 91 F.3d 1011, 1017 (7th Cir. 1996) ("Such a claim [of a hostile work environment under the ADA] would seem to arise under the general prohibition against discrimination with respect to terms or conditions of employment contained in § 12112(a)."); Casper v. Gunite Corp., No. CIV.A.99-3215, 2000 WL 975168, at *4 (7th Cir. July 11, 2000) ("Such a cause of action appears to exist because the ADA prohibits discrimination in the 'terms, conditions, and privileges of employment,' which is the exact same language that the Supreme Court relied upon in finding that Title VII encompasses claims of sex discrimination due to the creation of a hostile work environment in Meritor[.]" (citations omitted)).  Aside from the Court of Appeals for the Sixth Circuit, however, all of the courts of appeals that have addressed this issue, including our own, have assumed the existence of such a claim in order to dispose of the case on its merits.[3]  Because we are now

---

[3]     See McConathy, 131 F.3d at 563; see also Steele v. Thiokol Corp., --- F.3d ---, 2001 WL 173698, *3 (10th Cir. 2001); Vollmert v. Wis. Dep't of Transp., 197 F.3d 293, 297 (7th Cir. 1999); Silk, 194 F.3d at 803; Cannice v. Norwest Bank, 189 F.3d 723, 725 (8th Cir. 1999), cert. denied, 529 U.S. 1019 (2000); Walton, 168 F.3d at 666-67; Wallin v. Minn. Dep't of Corr., 153 F.3d 681, 687-88 (8th Cir. 1998), cert. denied, 526 U.S. 1004 (1999); Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 788 (8th

5

confronting a case that we cannot so easily dispose of, we find that we must consider the question whether the ADA embodies a claim for disability-based harassment. For the following reasons, we conclude that it does.

The ADA provides that no employer covered by the Act "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added). In almost identical fashion, Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1) (1994) (emphasis added).

It is evident, after a review of the ADA's language, purpose, and remedial framework, that Congress's intent in enacting the ADA was, inter alia, to eradicate disability-based harassment in the workplace. First, as a matter of statutory interpretation, in Patterson v. McLean Credit Union, the Supreme Court interpreted Title VII, which contains language similar to that in the ADA, to provide a cause of action for "harassment

_____

Cir. 1998).

6

[which is] sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment . . . because it affects a term, condition, or privilege of employment." 491 U.S. 164, 180 (1989) (alterations in original) (internal quotations and citation omitted) (quoting Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986)). We conclude that the language of Title VII and the ADA dictates a consistent reading of the two statutes. Therefore, following the Supreme Court's interpretation of the language contained in Title VII, we interpret the phrase "terms, conditions, and privileges of employment," as it is used in the ADA, to "strike at" harassment in the workplace. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 64 (1986) ("The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment." (quoting Los Angeles Dep't of Water & Power v. Manhart, 435 U.S. 702, 707 n.13 (1978))); see also Haysman v. Food Lion, Inc., 893 F. Supp. 1092, 1106 (S.D. Ga. 1995) ("It would seem illogical to hold that ADA language identical to that of Title VII was intended to afford disabled individuals less protection than those groups covered by Title VII.").[4]

---

[4]     We also note that, as a matter of statutory interpretation, in determining the meaning of a particular statutory provision, it is helpful to consider the interpretation of other statutory provisions that employ the same or similar

Not only are Title VII and the ADA similar in their language, they are also alike in their purposes and remedial structures. Both Title VII and the ADA are aimed at the same evil — employment discrimination against individuals of certain classes. See 42 U.S.C. § 12101(b) ("It is the purpose of this chapter . . . to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."); H.R. REP. No. 914, Title VII (1964), reprinted in 1964 U.S.C.C.A.N. 2391, 2401 (proclaiming that the purpose of Title VII is "to eliminate . . . discrimination in employment based on race, color, religion, or national origin" and declaring that Title VII is "to be the national policy to protect the right of persons to be free from such discrimination"); see also Walton, 168 F.3d at 666-67; Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157 (3d Cir. 1995); Haysman, 893 F. Supp. at 1106 ("This cause of action is necessary if the ADA is to fulfill its purpose of protecting 'qualified individuals with disabilities' from discrimination in the work place."). Moreover, this court has recognized that "the ADA is

---

language. See, e.g., Jeldness v. Pearce, 30 F.3d 1220, 1227 (9th Cir. 1994) ("Because Title IX and Title VI use the same language, they should, as a matter of statutory interpretation, be read to require the same levels of protection and equality."). Cf. United States v. New England Coal & Coke Co., 318 F.2d 138, 143 (1st Cir. 1963) ("Extrinsic aids such as . . . the accepted interpretation of similar language in related legislation are helpful in interpreting ambiguous statutory language." (citations omitted)).

8

part of the same broad remedial framework as . . . Title VII, and that all the anti-discrimination acts have been subjected to similar analysis." Miller v. Pub. Storage Mgmt., Inc., 121 F.3d 215, 218 (5th Cir. 1997); see also Buchanan v. City of San Antonio, 85 F.3d 196, 200 (5th Cir. 1996) (recognizing that "[t]he remedies provided under the ADA are the same as those provided by Title VII"); Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir. 1995) (finding ADA claims subject to the same method of proof as Title VII cases). Furthermore, other courts of appeals have noted the correlation between the two statutes. See Brown v. Brody, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999) (listing cases) (observing that "[c]ourts of appeals routinely apply the same standards to evaluate Title VII claims as they do ADA claims"); Miranda, 91 F.3d at 1017 ("[I]n analyzing claims under the ADA, it is appropriate to borrow from our approach to the respective analog under Title VII."); Newman, 60 F.3d at 156; Santiago v. City of Vineland, 107 F. Supp. 2d 512, 551 (D.N.J. 2000) ("[T]he Third Circuit applies the case law under [the ADA, Title VII, and the ADEA] interchangeably."). We conclude, therefore, that the purposes and remedial frameworks of the two statutes also command our conclusion that the ADA provides a cause of action for disability-based harassment.

In sum, existing decisions by the courts of appeals that have considered this issue evidence that a claim for disability-based harassment is cognizable under the ADA, and several

9

district courts have already confirmed that such a cause of action exists.[5]  Accordingly, because Title VII has been extended to hostile work environment claims, we follow the growing consensus that our harassment jurisprudence be extended to claims of disability-based harassment.  As such, we find that a cause of action for disability-based harassment is viable under the ADA and turn now to the question whether Flowers adduced sufficient evidence for a jury to conclude that she was a victim of such harassment.

## III. SUFFICIENCY OF THE EVIDENCE OF DISABILITY-BASED HARASSMENT

Southern Regional's sole contention on appeal regarding the evidence of harassment is that the conduct of which Flowers complains was not sufficiently severe or pervasive to rise to the level of a hostile work environment.  After reviewing all of the evidence presented at trial and recognizing that it could not "reweigh the evidence or reevaluate the credibility of the witnesses" as decided by the jury, the district court denied

---

[5]  See, e.g., Johnson v. City of Mason, 101 F. Supp. 2d 566, 577 (S.D. Ohio 2000); Fox v. Gen. Motors Corp., 94 F. Supp. 2d 723, 726 (N.D. W. Va. 2000) ("This framework indicates that a cause of action for harassment exists under the ADA."); Rodriquez v. Loctite P.R., Inc., 967 F. Supp. 653, 663 (D.P.R. 1997) (finding the logic in Haysman to be "unassailable" and agreeing that hostile work environment claims should be actionable under the ADA); Haysman, 893 F. Supp. at 1106-07 ("A contrary rule would have the illogical result of making an employer liable for firing a qualified individual because of a disability or its necessary consequences, while leaving untouched the unscrupulous employer who took the 'safe route' by harassing a disabled individual with the intent of making him quit."); Mannell v. Am. Tobacco Co., 871 F. Supp. 854, 860 (E.D. Va. 1994).

10

Southern Regional's Rule 50(b) motion as to its challenge to the sufficiency of the evidence of harassment.

## A. Standard of Review

"A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."  Ford v. Cimarron Ins. Co., 230 F.3d 828, 830 (5th Cir. 2000) (internal quotations omitted) (alteration in original) (quoting Jones v. Kerrville State Hosp., 142 F.3d 263, 265 (5th Cir. 1998)).  We review de novo the district court's ruling on a motion for judgment as a matter of law, applying the same legal standard as the trial court.  See id.; Brown v. Bryan County, Ok., 219 F.3d 450, 456 (5th Cir. 2000).  Therefore, "judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."  Ford, 230 F.3d at 830 (internal quotations omitted) (quoting Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 804 (5th Cir. 1997)).  Moreover, "we consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."  Brown, 219 F.3d at 456.  Although our review is de novo, we recognize that "our standard of review with respect to a jury verdict is especially deferential."  Id.  As such, judgment as a matter of law should not be granted unless the facts and

11

inferences point "so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1322 (5th Cir. 1994).

### B. The Evidence Is Sufficient to Support the Verdict

A cause of action for disability-based harassment is "modeled after the similar claim under Title VII." McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 563 (5th Cir. 1998). Accordingly, to succeed on a claim of disability-based harassment, the plaintiff must prove:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

Id. (internal quotations omitted) (quoting Rio v. Runyon, 972 F. Supp. 1446, 1459 (S.D. Fla. 1997)); see also Walton, 168 F.3d at 667; Wallin, 153 F.3d at 687-88.[6] Moreover, the disability-based harassment must "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." McConathy, 131 F.3d at 563 (internal quotations omitted) (quoting Farpella-Crosby v. Horizon Health Care, 97 F.3d

---

[6] No party here argues that Flowers was not disabled within the meaning of the ADA, and we assume arguendo that she was.

12

803, 806 (5th Cir. 1996)); see also Silk, 194 F.3d at 804; Walton, 168 F.3d at 667; Wallin, 153 F.3d at 688.

In determining whether a work environment is abusive, this court must consider the entirety of the evidence presented at trial, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." Shepherd v. Comptroller of Public Accounts, 168 F.3d 871, 874 (5th Cir.), cert. denied, 528 U.S. 963 (1999); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000). Even under this circuit's fairly high standard for severe or pervasive conduct, this court can reverse a jury verdict "only when reasonable minds in the exercise of impartial judgment could not have arrived at that verdict." DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir. 1995). Moreover, we are mindful of the Supreme Court's admonition in Reeves v. Sanderson Plumbing Products, Inc. that in entertaining a motion for judgment as a matter of law, a reviewing court must appreciate that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000) (internal quotations omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). With this

13

framework in mind, we consider Southern Regional's argument on appeal.

As noted above, Southern Regional maintains that the conduct of which Flowers complains was not sufficiently severe or pervasive to constitute harassment. We conclude, however, viewing the evidence in the light most favorable to the verdict, that Flowers has presented sufficient evidence to support the jury's decision. In early March 1995, Margaret Hallmark, Flowers's immediate supervisor, discovered that Flowers was HIV positive. Evidence at trial revealed that prior to the time Hallmark was informed of Flowers's HIV-positive status, Hallmark and Flowers were close friends, often going to lunch, drinks, and movies together and once even taking a trip to Mardi Gras in New Orleans.

The evidence at trial also revealed that almost immediately after Hallmark discovered Flowers's condition, Hallmark would no longer go to lunch with Flowers and ceased socializing with her. Moreover, Hallmark began intercepting Flowers's telephone calls, eavesdropping on her conversations, and hovering around Flowers's desk. At trial, Southern Regional did not attempt to explain Hallmark's sudden change toward Flowers. In addition, William Cooper, Southern Regional's president, became very distant, when the two used to get along very well. Cooper refused to shake Flowers's hand and would go to great pains to circumvent her office to get to other parts of the hospital.

14

Prior to the discovery of her HIV-positive status, Flowers had been required to submit to only one random drug test. However, after Flowers revealed to Hallmark her HIV-positive condition, Flowers was required to undergo four random drug tests within a one-week period. Furthermore, before being informed of Flowers's condition, Hallmark appeared more than satisfied with Flowers's work performance. In September 1994, Hallmark gave Flowers a score of thirty-eight, out of a possible forty, in a performance appraisal. This score enabled Flowers to receive a ten-percent raise. However, within the month after revealing her HIV-positive condition to Hallmark, Flowers was written up for the first time since December 1993. Then, on April 21, 1995, Hallmark asked Flowers to help her pick up some medical supplies from another part of the hospital. Instead of going to get the supplies, Hallmark lured Flowers to a conference room in which Beverly Mason, Southern Regional's human resource manager, and Osterberger were waiting. The purpose of the meeting was to give Flowers another write up and place her on a ninety-day probation. Flowers testified that, at this meeting, she felt "ambushed from all sides."

Then, just days before Flowers's ninety-day probation ended, Flowers was again written up and placed on another ninety-day probation. Again, she was lured into a meeting under false pretenses; this time Cooper, the president of Southern Regional, was in attendance. Flowers testified that at this meeting Cooper

called her a "bitch" and said that he was "tired of her crap."
At this point in time, Flowers became distressed enough to begin
carrying a tape recorder with her at all times while she was at
work.

Finally, on November 13, 1995, Flowers was discharged.
Flowers testified that, at this discharge meeting, Cooper ordered
Flowers to turn off the tape recorder that she was carrying in
her coat pocket.  When she refused to do so, Cooper walked around
his desk and physically removed the recorder from her pocket.

Considering the evidence presented at trial in its entirety,
we conclude that the facts and inferences from the evidence do
not point so strongly and overwhelmingly against the verdict that
reasonable persons could not disagree.  The jury could have
properly inferred from the evidence that Hallmark's and Cooper's
conduct was sufficiently severe or pervasive to create a hostile
work environment and unreasonably interfere with Flowers's work
performance.  Moreover, a reviewing court may not disregard the
jury's credibility assessments.  Given the deference we must
accord to a jury's evaluation of the evidence before it, we find
that the evidence is sufficient to support the jury's finding of
harassment.  Southern Regional does not contest that Flowers
belonged to a protected group based upon her HIV-positive status.
Furthermore, as just discussed, the jury was presented with
sufficient evidence to conclude that Flowers was subjected to
Hallmark's and Cooper's unwelcome harassment because of her

status as an HIV-positive individual and that this harassment was so severe and pervasive that it unreasonably interfered with her job performance.  Finally, Southern Regional does not contest that it was aware of the harassment, and the jury had sufficient evidence before it to conclude that Southern Regional failed to take prompt action to remedy the harassment.  Accordingly, the district court did not err in denying Southern Regional's Rule 50(b) motion on this issue.

## IV. ANY EVIDENCE OF INJURY

Finally, Southern Regional argues that Flowers failed to offer any evidence at trial relating to damages sustained as a result of the harassment.  The district court found that Southern Regional failed to raise this issue at trial in its Rule 50(a) motions.  As such, the district court concluded that Southern Regional waived this argument and declined to consider it.

### A. Standard of Review

If a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all of the evidence, that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal.[7]  See Loqal v. United States, 195 F.3d 229, 231

_____

[7]  Only a de minimis departure from, or technical noncompliance with, this rule permits a reviewing court to inquire into the sufficiency of the evidence.  See Taylor Publ'g Co. v. Jostens, Inc., 216 F.3d 465, 471-72 (5th Cir. 2000);

17

(5th Cir. 1999); <u>United States ex rel. Wallace v. Flintco Inc.</u>, 143 F.3d 955, 960 (5th Cir. 1998).  As such, "[i]t is the unwavering rule in this Circuit that issues raised for the first time on appeal are reviewed only for plain error."  <u>Flintco Inc.</u>, 143 F.3d at 963 (internal quotations omitted) (quoting <u>McCann v. Tex. City Refining, Inc.</u>, 984 F.2d 667, 673 (5th Cir. 1993)).  On plain error review, the question for this court "is not whether there was substantial evidence to support the jury verdict, but whether there was any evidence to support the jury verdict."  <u>Id.</u> at 964 (internal quotations and emphasis omitted) (quoting <u>McCann</u>, 984 F.2d at 673).  If any evidence exists that supports the verdict, it will be upheld.  <u>See</u> <u>id.</u>

   B. No Evidence Exists to Support the Jury's Award of Damages

---

<u>Polanco v. City of Austin, Tex.</u>, 78 F.3d 968, 974 (5th Cir. 1996).  "Technical noncompliance . . . is gauged by whether the purposes of the rule are satisfied[.]"  <u>Polanco</u>, 78 F.3d at 974. Therefore, if the defendant made a 50(a) motion at the close of the plaintiff's case, and "the motion sufficiently alerted the court and the opposing party to the sufficiency issue," <u>id.</u> at 975, a court may find a de minimis departure and weigh the evidence.  <u>See</u> <u>id.</u>
      Southern Regional claims that it "implicitly" raised this issue in its Rule 50(a) motion at trial.  The district court rejected this argument, finding that Southern Regional's failure to raise the issue in its Rule 50(a) motion did not amount to technical noncompliance or a de minimis departure from the rule. The court found that "the record showed that the substance of [Southern Regional]'s motion and arguments did not even give a hint that this was one of the grounds upon which [Southern Regional] was moving."  We conclude, after our review of the record, that the district court did not err in finding the challenge to the sufficiency of the evidence of harassment damages waived.

18

Southern Regional contends on appeal that the only evidence presented at trial regarding damages pertained exclusively to the damages Flowers sustained as a result of her <u>termination</u> from Southern Regional.  Southern Regional asserts that because the jury found that the reasons behind Flowers's termination were nondiscriminatory and because Flowers "cannot separate her claims of emotional distress from a claim for which she is not entitled to recover," there is "no evidence" to support the jury's award of damages.

To recover more than nominal damages for emotional harm, a plaintiff must provide proof of "actual injury" resulting from the harassment.  <u>See</u> <u>Brady v. Fort Bend County</u>, 145 F.3d 691, 718 (5th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1105 (1999); <u>see</u> <u>also</u> <u>Carey v. Piphus</u>, 435 U.S. 247, 248 (1978).  Furthermore, emotional harm will not be presumed simply because the plaintiff is a victim of discrimination.  <u>See</u> <u>Patterson v. P.H.P. Healthcare Corp.</u>, 90 F.3d 927, 939 (5th Cir. 1996).  To demonstrate an actual, or "specific discernable," injury, "[t]he existence, nature, and severity of emotional harm" must be proved.  <u>See</u> <u>id.</u> at 940; <u>see also</u> <u>Brady</u>, 145 F.3d at 718.

Even under the highly deferential plain error standard, we conclude that Flowers failed to present any evidence of actual injury, such as would entitle her to an award of more than nominal damages.  The only evidence of injury adduced by Flowers was of events that occurred after she was terminated from

19

Southern Regional,[8] evidence that is irrelevant to the question of actual injury stemming from the harassment.

Flowers asserts that because she testified at trial that the harassment and subsequent discharge "took away [her] self-respect and [her] dignity," she has demonstrated "some evidence" of damage. However, we conclude that this testimony, by itself, cannot support an award greater than nominal damages. Not only is the totality of the evidence solely Flowers's own testimony, see Patterson, 90 F.3d at 938 ("[A] claimant's testimony alone may not be sufficient to support anything more than a nominal damage award."), it fails to demonstrate the nature or severity of the alleged emotional harm. See Brady, 145 F.3d at 718.

As the record makes clear, daily harassment towards an HIV-positive individual such as Flowers may not only affect that individual emotionally, but may also cause a decline in the health of that individual, resulting in a particularized physical consequence. Dr. Osterberger, Flowers's personal physician at the time of her employment with Southern Regional, provided general testimony regarding the effects of stress on a person with HIV and stated that such stress "can" aggravate HIV;

---

[8] Flowers testified that, after her discharge from Southern Regional, she "started losing weight, had a lot of diarrhea, nausea, wasn't sleeping, [and] just got ill." Her friend and former co-worker Dawn Van Purnell testified that after her termination, Flowers "lost a lot of weight," "started going to the doctor a lot more," and "had diarrhea much more than she had ever had before."

20

however, this general testimony did not connect the possible effects of such stress with a particular injury to Flowers. Dr. Osterberger did not testify that Flowers suffered injury, but only stated that it was possible for HIV-positive individuals to suffer injury. Moreover, there is no testimony that Flowers's health deteriorated during the period of time between Hallmark's discovery of Flowers's HIV-positive condition and Flowers's termination from Southern Regional.

Because there is no evidence in the record focusing on the existence of actual injury during the time period before Flowers was discharged, we must vacate the jury's award of damages.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the final judgment entered on the jury verdict as to Southern Regional's liability for disability-based harassment. However, we VACATE the jury's damages award and REMAND the case for the entry of an award of nominal damages. Each party shall bear its own costs.

21