IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-11280
_____


JANIS A. STALCUP


                                     Plaintiff - Appellant

        v.

COMMUNICATION WORKERS OF AMERICA, LOCAL 6203


                                     Defendant - Appellee

_____

        Appeal from the United States District Court
              for the Northern District of Texas
                        (5:00-CV-221)
_____
                        June 13, 2002


Before KING, Chief Judge, PARKER, Circuit Judge, and ELLISON,
District Judge.[*]

PER CURIAM:[**]

        In federal district court, Plaintiff-Appellant Janis A.

Stalcup asserted a claim of disability discrimination pursuant to

_____

        [*]   District Judge of the Southern District of Texas,
sitting by designation.

        [**]   Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 <u>et</u> <u>seq.</u> (1994).  Stalcup appeals from the district court's grant of summary judgment in favor of Defendant-Appellee the Communication Workers of America.  For the following reasons, we AFFIRM the judgment of the district court.

### I.  Factual and Procedural History

Janis A. Stalcup began her employment with Southwestern Bell Telephone Company ("SWB") in July 1977.  During her employment with SWB, Stalcup was a member of the Communication Workers of America ("CWA"), the collective bargaining representative for SWB employees.  Over the course of her employment, Stalcup suffered from a condition known as Multiple Chemical Sensitivity. According to Stalcup, this condition led to chronic sinusitis, upper respiratory infections, sinus headaches, migraines, seizures, difficulty sleeping, chronic diarrhea, and colon spasms.  These medical problems caused Stalcup to be absent from work on many occasions.  On July 9, 1993, Stalcup was terminated from her job as a supplies attendant because of unsatisfactory attendance.

Stalcup alleges that her attendance problems and eventual termination were caused, at least in part, by CWA's discriminatory behavior.  Specifically, Stalcup asserts that CWA engaged in discrimination prohibited by the Americans with Disabilities Act of 1990 (the "ADA") by refusing to file, appeal,

2

or arbitrate Stalcup's grievances claiming disability discrimination, by refusing to secure favorable accommodations for Stalcup under the ADA, and by failing to discipline CWA members regarding discriminatory acts against Stalcup. Stalcup filed charges of disability discrimination with the Equal Employment Opportunity Commission (the "EEOC") against both SWB and CWA. Stalcup received a letter from the EEOC, dated April 7, 2000, informing her of her right to sue CWA. Stalcup filed suit against CWA in federal district court on July 7, 2000.[1] CWA moved for summary judgment on April 16, 2001, and the district court granted summary judgment in favor of CWA on September 4, 2001. The district court concluded that Stalcup failed to demonstrate that she is a "qualified individual with a disability" under the ADA and, in the alternative, failed to establish a prima facie case of disability discrimination by CWA. Stalcup timely appealed to this court.

## II.  Summary Judgment Standard of Review

We review a grant of summary judgment de novo, applying the same standards as the district court. Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 167 (5th Cir. 1999). Summary judgment is proper when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment

---

[1]  Stalcup sued SWB in a separate lawsuit filed in September 1995. That suit eventually settled. A third-party complaint filed in this case by CWA against SWB was voluntarily dismissed on March 26, 2001.

as a matter of law." FED. R. CIV. P. 56(c). We view the evidence in a light most favorable to the non-movant. Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997). However, if the moving party presents sufficient evidence to support summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial in order to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

### III. Stalcup's ADA Claim Against CWA

The ADA prohibits discrimination by a "covered entity" against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity" includes a "labor organization." Id. at § 12111(2). The parties do not dispute that the expansive discrimination claims alleged by Stalcup fall within the purview of the ADA because they relate to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." In response to Stalcup's claims, CWA argues that the district court was correct in concluding: (1) that Stalcup is not a "qualified individual with a disability" under the ADA and

4

(2) that, even if Stalcup is a "qualified individual with a disability," she fails to establish a prima facie case of disability discrimination.

   A.  Elements of a Prima Facie Case of Discrimination by a Union

   Neither this court nor any of our sister courts of appeals has specified the elements of a prima facie case for discrimination by a union in the context of the ADA.  However, we have previously recognized that Title VII of the Civil Rights Act of 1964 ("Title VII") and the ADA are similar in their language, purposes, and remedial structures.[2]  Flowers v. S. Reg'l Physician Servs. Inc., 247 F.3d 229, 234 (5th Cir. 2001).  Because of this similarity, we regularly borrow from Title VII jurisprudence when analyzing ADA claims.  See, e.g., id. at 234-35; Miller v. Pub. Storage Mgmt., Inc., 121 F.3d 215, 218 (5th Cir. 1997); Buchanan v. City of San Antonio, 85 F.3d 196, 200

_____

[2]  Title VII provides that it is unlawful for an employer:
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e-2(a) (1994).

5

(5th Cir. 1996); Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir. 1995). Thus, we now turn to Title VII jurisprudence for assistance in determining the elements of Stalcup's prima facie case.

The Seventh Circuit, in Bugg v. International Union of Allied Industrial Workers of America, Local 507, 674 F.2d 595 (7th Cir. 1982), first articulated the elements of a prima facie case of discrimination by a union. Under Bugg, a plaintiff establishes a prima facie case against a union by showing: "(1) that the [employer] committed a violation of the collective bargaining agreement with respect to the plaintiff; (2) that the [union] permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) that there was some indication that the [union's] actions were motivated by racial animus." Id. at 598 n.5. In analyzing Stalcup's prima facie case of discrimination, the district court in this case applied the Bugg elements.

Stalcup argues that, instead of analyzing her prima facie case under the Bugg elements, the district court should have looked for guidance from the Supreme Court's opinion in Goodman v. Lukens Steel Co., 482 U.S. 656 (1987). In Goodman, African-American employees asserted racial discrimination claims under Title VII against their union. Id. at 658-59. The employees argued that the union discriminated against them by repeatedly failing to include assertions of racial discrimination in

6

grievances filed with their employer.  Id. at 666.  The Court

concluded that "[a] union which intentionally avoids asserting

discrimination claims, either so as not to antagonize the

employer and thus improve its chances of success on other issues,

or in deference to the perceived desires of its white membership,

is liable under [Title VII]."  Id. at 669 (internal citations and

quotations omitted).  In coming to this conclusion, the Court

noted that the employees' claims of disparate treatment required

a showing of intentional discrimination.  Id. at 668-69.

Stalcup argues that her case is factually analogous to

Goodman because CWA intentionally avoided asserting her

grievances just as the union in Goodman refused to assert the

grievances of its African American members.  Stalcup further

argues that a showing of intentional discrimination is sufficient

under Goodman to establish CWA's ADA violation.  Stalcup

maintains that she is not required to show a breach of the

collective bargaining agreement, a breach of the duty of fair

representation, or animus in order to establish a prima facie

case of discrimination against CWA.  For purposes of this appeal

only, we assume that Stalcup is correct.  We assume that Stalcup

can establish an ADA violation with evidence of intentional

discrimination and that she need not establish a breach of the

collective bargaining agreement, a breach of the duty of fair representation, or animus.[3]

In order to establish intentional discrimination, Stalcup may produce direct evidence of discrimination or may utilize the framework established by <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to raise an inference of discrimination. <u>Daigle</u>, 70 F.3d at 396. In the ADA context, under the <u>McDonnell Douglas</u> framework, when asserting an ADA claim against an employer, a plaintiff can establish a prima facie case of discrimination by showing that: (1) she suffers from a disability; (2) she is qualified for the job; (3) she was subject to an adverse employment action; and (4) she was treated less favorably than non-disabled employees. <u>Id.</u> It is well-

_____

[3]  In <u>Vaca v. Sipes</u>, 386 U.S. 171 (1967), the Supreme Court established the parameters of the duty of fair representation. The Court explained that a breach of the duty of fair representation "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." <u>Id.</u> at 190. Given this definition of a breach of the duty of fair representation, there is not much difference between the <u>Bugg</u> and <u>Goodman</u> standards. Once a Title VII plaintiff establishes intentional discrimination by a union – either with direct evidence or by using the burden-shifting framework of <u>McDonnell Douglas</u> – the plaintiff also inherently establishes a breach of the union's duty of fair representation. <u>See</u> <u>Causey v. Ford Motor Co.</u>, 516 F.2d 416, 425 n.12 (5th Cir. 1975) (observing that "[t]he fair representation duty under the [Labor Management Relations Act], as enumerated in <u>Vaca</u>, overlaps with the Title VII protection, and the <u>Vaca</u> standards (proscribing arbitrary, discriminatory, and bad faith conduct) apply in Title VII cases.") (internal citations and quotations omitted). Thus, the real effect of our assumption in this case is to excuse Stalcup from establishing a breach of the collective bargaining agreement and animus.

8

established that prima facie elements are not set in stone but, rather, can be formulated to fit the circumstances of a particular case. McDonnell Douglas, 411 U.S. at 802 n.13; see also LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 n.3 (5th Cir. 1996) (noting that "[t]he elements of a plaintiff's prima facie case necessarily vary according to the facts of the case and the nature of the claim"). The prima facie elements of an ADA claim, as outlined by this court in Daigle, can be easily manipulated to fit the contours of Stalcup's discrimination claim against CWA. Therefore, even assuming that Stalcup is not required to establish a breach of the collective bargaining agreement, a breach of the duty of fair representation, or animus to prevail, Stalcup must still establish that: (1) she suffers from a disability; (2) she was subject to an adverse union action; and (3) she was treated less favorably than non-disabled employees.[4] See Alexander v. Local 496, Laborers' Int'l Union of N. Am., 177 F.3d 394, 402-03 (6th Cir. 1999) (requiring the

---

[4] The second Daigle element, whether the plaintiff is qualified for the job, is irrelevant in this case because Stalcup is asserting discrimination in the context of the grievance process. Stalcup is entitled to a non-discriminatory grievance process regardless of her job qualifications. However, it is certainly conceivable that some claims of union discrimination would require a showing of job qualification to establish a prima facie case. For example, a prima facie case of discrimination by a union based on the union's failure to recommend the plaintiff for a promotion might require a showing that the plaintiff is qualified for the promotion.

9

plaintiff to demonstrate similar elements in order to establish a prima facie case of discrimination by a union).

B.  Did Stalcup Establish a Prima Facie Case of Discrimination by CWA?

Accepting arguendo that Stalcup is disabled, we nevertheless conclude that Stalcup did not establish a prima facie case of discrimination by CWA because Stalcup has not established by a preponderance of the evidence that CWA treated her less favorably than non-disabled employees.  Stalcup's evidence shows that CWA did not fully pursue all of Stalcup's complaints.  Although CWA pursued some of Stalcup's complaints with formal grievances, CWA addressed other complaints with informal grievances or informal meetings with SWB management.  Viewing the evidence in a light most favorable to Stalcup, CWA apparently decided not to pursue with SWB some of Stalcup's complaints at all.  However, nothing in the record suggests that CWA's handling of Stalcup's complaints was different than its handling of complaints from non-disabled employees.

In Vaca, the Court emphasized the importance of a union's power "to settle the majority of grievances short of the costlier and more time-consuming steps" of the grievance process.  386 U.S. at 192.  The evidence in the record shows that CWA addressed each of Stalcup's documented complaints in some manner, even if it ultimately decided not to submit each one to the higher steps of the grievance process or to arbitration.  In answer to

10

Stalcup's many complaints, CWA successfully prompted SWB to implement a number of workplace accommodations which eased Stalcup's discomfort. For example, SWB designated a smoke-free, fragrance-free vehicle for Stalcup's use, installed a ventilation system in the smoking lounge, moved the employee refrigerator out of the smoking lounge, and prohibited employees from bringing non-necessary fragrance sources into the workplace. At Stalcup's request, CWA also discussed with management SWB's by-passing of Stalcup for the position of Operator, a position for which Stalcup was qualified and was the senior applicant. CWA secured SWB's agreement to offer the position to Stalcup, who subsequently refused to accept the position.

Furthermore, CWA filed formal grievances regarding Stalcup's final suspension and termination from SWB. CWA processed those grievances through all the steps of the grievance process, arguing at each step that SWB had acted too harshly in terminating Stalcup. In the grievance meetings, CWA urged SWB to provide Stalcup with the remedies she sought, including reinstatement after termination, correction of her attendance records, improved indoor air quality, unlimited access to restrooms, a transfer to another department, and a compensatory lump sum settlement or disability pension. No evidence in the record suggests that CWA exerts greater efforts for non-disabled employees than it did for Stalcup. Stalcup's subjective belief of discrimination is not sufficient to warrant judicial relief.

11

Bauer v. Albemarle Corp., 169 F.3d 962, 967 (5th Cir. 1999). Thus, we conclude that Stalcup fails to demonstrate by a preponderance of the evidence that CWA treated her less favorably than non-disabled employees. Because Stalcup's prima facie case of disability discrimination fails on this ground, we need not consider whether Stalcup has demonstrated the other elements of a prima facie case of discrimination by a union.

## IV. Conclusion

For the foregoing reasons, we find that the district court properly granted summary judgment for CWA. The district court correctly concluded that Stalcup has failed to establish her prima facie case of disability discrimination. Accordingly, we AFFIRM the district court's judgment in favor of CWA.