IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-51101

NUTRASEP LLC

Plaintiff - Appellant

v.

TOPC TEXAS LLC; THUMB OILSEED PRODUCERS COOPERATIVE

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:05-CV-523

Before KING, HIGGINBOTHAM, and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Nutrasep LLC ("Nutrasep") entered into a series of contracts to provide to Defendants-Appellees Thumb Oilseed Producers Cooperative ("Thumb") and TOPC Texas LLC[1] ("TOPC Texas") proprietary

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Thumb and Nutrasep formed TOPC Texas to undertake the project. Thumb is TOPC Texas's sole member.

technology for processing the byproduct of soybean refining into lecithin.[2]   As an up-front licensing fee, TOPC Texas signed a $350,000 Promissory Note (the "Note") payable to Nutrasep and due February 14, 2005.  Thumb guaranteed the Note in an accompanying security agreement.  When Thumb and TOPC Texas failed to pay on the Note, Nutrasep sued them.  Claiming that Nutrasep misled them about its technological know-how, which they insist never worked, Thumb and TOPC Texas filed a counter-claim against Nutrasep.  A jury found that all three parties — Thumb and TOPC Texas on one side, and Nutrasep on the opposite side — breached one of the four contracts, awarding $67,500 in damages to Thumb and nothing to the other parties.  Neither Thumb nor TOPC Texas appealed, but Nutrasep appealed the denial of its motion for a judgment as a matter of law ("jmol"). We affirm in part and reverse in part.

## I. ANALYSIS

### A. Applicable Law

In diversity cases like this one, we apply state substantive law and federal procedural law.[3]  In this case, the applicable law is that of Texas.

### B. Standard of Review

A district court must deny a motion for jmol "unless the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'"[4]  We review denials of motions for jmol de novo, applying the same legal standard as the district court.[5]  We consider all of the evidence, drawing all reasonable inferences and resolving

---

[2] Lecithin is an emulsifier (a thickening agent) commonly found in many food products, such as chocolate and ice cream.

[3] Foradori v. Harris, 523 F.3d 477, 486 (5th Cir. 2008) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).

[4] Flowers v. S. Reg'l Physician Servs. Inc., 247 F.3d 229, 235 (5th Cir. 2001).

[5] Id.

all credibility determinations in the light most favorable to the non-moving party. "Although we review denial of a motion for [jmol], we note that our standard of review with respect to a jury verdict is especially deferential."[6]

## C. Breach of Contract

Four contracts signed by the parties were at issue in this dispute: the Note, the Security Agreement, the Technology License Agreement (the "TLA"), and the Manufacturing and Supply Agreement. These contracts obligated Nutrasep to provide the contemplated technology and obligated TOPC Texas, with Thumb as its guarantor, to pay Nutrasep $350,000 as an initial licensing fee, followed by continuing licensing fees and royalties. The total value to Nutrasep over the life of the contracts was $3.35 million, including the initial licensing payment and ongoing licensing and royalty payments for 20 years. The Note was due on February 14, 2005; neither TOPC Texas nor Thumb paid, claiming Nutrasep's technology was not "unique" and was incapable of producing marketable soy lecithin. The jury found that all three entities breached the TLA, and Nutrasep filed a motion for jmol. It sought reversal of the jury finding that it had breached the TLA and the award of damages to Thumb.

The district court may grant jmol only if "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."[7] Our review of the record convinces us that there was substantial evidence on both sides of the controversy for a rational trier of fact to find that all three failed to perform under the contract.[8] The question was one of fact for

---

[6] Brown v. Bryan County, Okla., 219 F.3d 450, 456 (5th Cir. 2000).

[7] Flowers, 247 F.3d at 235.

[8] Both sides raised numerous arguments in support of and in opposition to the sufficiency question, including whether the TLA was orally modified, remittur, and whether any of the breaches were excused, in what appears to be an attempt to relitigate the case in this court. We do not reach most of these because we are satisfied that the verdict should stand.

the jury, and the district court properly denied Nutrasep's jmol motion.  We therefore affirm.

D. Damages

The jury awarded Thumb $67,500 in damages suffered as a result of Nutrasep's breach.  On appeal, Nutrasep asserts that the evidence was insufficient to support the award, so that the district court erred when it denied Nutrasep's motion for jmol on this issue.  We agree with Nutrasep.

To win compensatory damages in a breach of contract case under Texas law, a plaintiff must show that he suffered a pecuniary loss as a result of the breach.[9]  He must prove those damages with "reasonable certainty."[10]  "The causation or causal connection between the event sued upon and the plaintiff's injuries or damages must be demonstrated by evidence of probative value."[11]

Thumb sought to recover the money that it had laid out in reliance on its deal with Nutrasep. Thumb supported its claim with testimony by its executives that the co-op had paid to hook up the processing machines that Nutrasep leased, paid electrical bills, and leased trailers in which to store barrels of wet gums, the byproduct of soybean refining that was to be turned into marketable lecithin.  Standing alone, this testimony is meager: The entirety of the Thumb executives' speculation of the amounts spent and for what is contained in but a few of the roughly 800 pages of trial testimony and mentions few specifics.

---

[9] Diaz v. State & County Mut. Fire Ins. Co., No. 04-06-00373-CV, 2007 Tex. App. LEXIS 3935, at *6 (Tex. App.—San Antonio 2007, no pet.) (citing Prudential Sec., Inc. v. Haugland, 973 S.W.2d 394, 396-97 (Tex. App.—El Paso 1998, pet. denied)).

[10] City of Beaumont v. Excavators & Constructors, 870 S.W.2d 123, 139 (Tex. App.—Beaumont 1993, writ denied).  That is not to say that damages must be established with precision, they need not be. Stewart & Stevenson Servs., Inc. v. Enserve, Inc., 719 S.W.2d 337, 346 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd).

[11] City of Beaumont, 870 S.W.2d at 139.

The testimony might have been successfully bolstered by invoices or other supporting documentation, which Thumb did provide; but Thumb did nothing more than hand the jury hundreds of invoices and receipts with no explanations, summaries, compilations or the like. Thumb executives testified that the co-op spent $80,000 to $100,000 in the expectation that the project would go forward, yet none of that testimony attempted to connect this to the raw stack of receipts and invoices that they tendered. For example, we have located no receipt for electrical bills, other than Thumb's unsubstantiated invoices to TOPC Texas, despite both Thumb witnesses testifying that this was a large part of the co-op's expense.[12] In fact, the sums represented in the financial documents handed to the jury total vastly more than the damages Thumb claimed. And, many of the invoices are duplicative. For example, there are more than a dozen copies of receipts for a single expenditure.[13] Additionally, the expenditures span at least a year, bracketing the time when Nutrasep demanded payment on the Note. Some expenditures even post-date Nutrasep's filing of the lawsuit, unquestionably after the parties ceased (or should have ceased) to rely on the contract.[14] Although it is possible that the non-duplicative receipts represent valid expenditures, Thumb made no effort to demonstrate this.

---

[12] Thumb did include bills from an electrical company though these seem to be for parts and labor.

[13] A sizeable portion of the documents turned over to the jury is invoices sent by Thumb to TOPC Texas for payments Thumb made on TOPC Texas's behalf, many of which represent the same bill from one month to the next augmented by service charges.

[14] Thumb essentially sought reliance damages, which "'include expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed.'" Bechtel Corp. v. Citgo Prods. Pipeline Co., ___ S.W.3d ___, 2008 WL 4482688, at *20 (Tex. App.—Austin 2008, no pet.) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 349); see also O'Farrill Avila v. Gonzalez, 974 S.W.2d 237, 247 (Tex. App.—San Antonio 1998, pet. denied) (damages in contract suits protect three interests: restitution, reliance and expectation).

To prove its damages with "reasonable certainty," a party must do more than guess at its expenses then dump a ream of unexplained receipts in the jury's lap. The jury is not required to construct a party's case from the raw data when the party fails to do so. We conclude that Thumb did not provide legally sufficient evidence on the basis of which a reasonable juror could determine that Thumb suffered damages in the amount of $67,500 — or any other amount, for that matter. Consequently, the district court erred in denying Nutrasep's motion for jmol on the jury's award of damages to Thumb. We reverse this award and render judgment that Thumb take nothing.

AFFIRMED in part; REVERSED and RENDERED in part.