# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 16, 2010

No. 07-10208

Charles R. Fulbruge III
Clerk

JEREMY GREEN,

Plaintiff–Appellant,

v.

SCHUTT SPORTS MANUFACTURING CO., an Illinois Corporation;
SCHUTT DESIGN GROUP, INC., an Illinois Corporation;
SCHUTT SPORTS DISTRIBUTION COMPANY, an Illinois Corporation;
SCHUTT MANUFACTURING COMPANY, an Illinois Corporation,

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:05-CV-164-C

Before GARZA, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Jeremy Green appeals the district court's entry of a take-nothing judgment following a jury verdict in favor of defendants Schutt Sports Manufacturing Co., Schutt Design Group, Inc., Schutt Sports Distribution Co., and Schutt Manufacturing Co. (collectively, Schutt). Green contends that the district court erred in (1) foreclosing his pursuit of a claim for gross negligence, (2) excluding

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 07-10208

testimony of a witness offered as an expert, (3) excluding certain other proffered evidence, (4) admitting certain evidence, and (5) instructing the jury. We affirm.

## I

At the time of his injury, Jeremy Green was a student and football player at Levelland High School. During a scrimmage with an opposing team, Green tackled a player and suffered a severe burst-fracture of one of his neck vertebra that tragically resulted in quadriplegia.

Green sued Schutt, the manufacturer of the helmet he was wearing at the time of his injury, asserting various theories of liability. The district court granted summary judgment in favor of Schutt on Green's claims of manufacturing defects, marketing defects, and breach of warranty. Green abandoned his negligence claim in the joint pre-trial order,[1] and the court subsequently dismissed Green's claim for punitive damages based on gross negligence. The only liability theory submitted to the jury was whether the helmet was defectively designed.

After an eight-day trial, the jury failed to find a design defect. The district court entered judgment for Schutt and denied Green's motion for a new trial. Green has timely appealed, asserting numerous issues.

## II

Green contends that the district court erred in dismissing his gross negligence claim for punitive damages. Green argues in his briefing in this court that Texas law "permits gross negligence claims in strict liability cases" and similarly that "a party may pursue gross negligence damages in a strict liability case."

We need not decide whether or under what circumstances recovery for punitive damages is available under Texas law when the only cause of action

---

[1] *See Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 919 (5th Cir. 2002) (holding that a joint pre-trial order supersedes all other pleadings).

No. 07-10208

seeking recovery of actual damages is a products liability claim asserting a design defect. A Texas statute precludes an award of exemplary damages unless actual damages are also awarded.[2] The Supreme Court of Texas has explained that similarly, under the common law, there could be no recovery of exemplary damages unless there was an entitlement to compensatory relief, recognizing "the long settled rule that a plaintiff must show himself entitled to compensatory relief before punitive damages are recoverable."[3]

In the present case, the jury failed to find a design defect. It therefore failed to award any actual damages. Green asserted no other cause of action for which actual damages could be awarded. He does not challenge the district court's ruling that he abandoned his claim for negligence. Accordingly, any failure to submit whether Schutt was grossly negligent and whether exemplary damages should be awarded was harmless because there is no basis for the predicate award of actual damages.

### III

At trial Green sought to call as a witness Thomas "Hollywood" Henderson, a former National Football League linebacker. The district court concluded that Henderson was not qualified as an expert to opine on helmet safety and design. Green contends on appeal that this ruling was in error because Schutt's defense had two main components: that no helmet could be designed to prevent neck and spine injuries, as distinguished from head injuries, and the cause of Green's catastrophic injury was the manner in which he executed the tackle, with his head bent or down rather than up. Green contends that Henderson was qualified to testify about "the value of football helmets," that his testimony would be "in many ways more valuable than that provided by any 'technical

---

[2] TEX. CIV. PRAC. & REM. CODE ANN. § 41.004(a) ("[E]xemplary damages may be awarded only if damages other than nominal damages are awarded.").

[3] *Travelers Indem. Co. of Ill. v. Fuller*, 892 S.W.2d 848, 852 (Tex. 1995).

expert,'" and that "this witness had the appropriate knowledge, skill and expertise to guide this jury in resolving the question whether plaintiff's technique was the cause of his injury."

The district court did not abuse its discretion in excluding Henderson's testimony as an expert regarding "the value of football helmets." There is no evidence in this record of the witness's expertise in this area.

With regard to whether Green's injury was caused by his tackling technique, he has not explained on appeal, in even general terms, what Henderson's testimony would have been and how it may have assisted the jury. We therefore have no basis for concluding that any error in excluding Henderson as a witness was harmful.

## IV

The district court denied various motions in limine that Green filed, and Green contends that these rulings require reversal and a new trial. We review the district court's evidentiary rulings for abuse of discretion.[4] "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[5] If we find an abuse of discretion in an evidentiary ruling, we review for harmless error and upset the judgment below only if the evidentiary ruling affected the substantial rights of the complaining party.[6] Evidentiary rulings are harmless if, in the context of the entire record, they have no effect or "very slight effect" on the jury's verdict.[7]

---

[4] *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005).

[5] *Id.* (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)).

[6] *Id.* at 774-75 (quoting *Bocanegra*, 320 F.3d at 584).

[7] *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 547 (5th Cir. 1996) (quoting *Pregeant v. Pan Am. World Airways, Inc.*, 762 F.2d 1245, 1249 (5th Cir. 1985)) (internal quotation marks omitted).

No. 07-10208

## A

Green asserts that the district court erred by denying six motions in limine that he filed to exclude any arguments and evidence relating to "comparative fault, assumption of the risk, competitive sports doctrine, and related negligence defenses." Green does not challenge any specific evidence that was admitted at trial, nor does he cite any part of the trial transcript as an example of evidence that was admitted over the objections he asserted in his motions in limine.

Even assuming, without deciding, that Green has sufficiently apprised this court of the evidence he challenges, we cannot conclude that the district court abused its discretion. Under Texas law, comparative responsibility expressly applies to defective design tort claims.[8] Under Texas's statutory scheme, a plaintiff's recovery in tort is reduced by the proportion he contributed to causing his own harm through actions that were negligent or otherwise fell below some legal standard.[9] (If the plaintiff's responsibility exceeded fifty percent, recovery is barred completely.[10]) But consumers have no duty to discover or guard against product defects, so a plaintiff's failure to discover or failure to guard against a product defect cannot reduce the amount of damages received by the plaintiff.[11]

The record reflects that Schutt's arguments regarding Green's role in the causation of his injury were limited to contentions that Green tackled improperly by lowering his head and making first contact with his helmet and that no helmet could provide protection to the neck under such circumstances. The line

---

[8] TEX. CIV. PRAC. & REM. CODE ANN. § 33.003.

[9] *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 593 (Tex. 1999) (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.011(4), 33.012(a)).

[10] TEX. CIV. PRAC. & REM. CODE ANN. § 33.001.

[11] *Sanchez*, 997 S.W.2d at 594.

No. 07-10208

between permissible and impermissible evidence is thin, if not blurred, when, in a case such as this, it is permissible to offer evidence pertinent to comparative responsibility but impermissible to offer evidence that the plaintiff failed to guard against a product's limitations. However, we cannot say that the district court erred in denying Green's motion in limine pertaining to comparative responsibility.

The assumption of the risk as a defense to negligence claims under Texas law has been abrogated and replaced by the comparative responsibility regime described above.[12] But as discussed above, the evidence offered at trial that might arguably have suggested that Schutt assumed the risks inherent in playing football was relevant with regard to the design defect claim and the producing cause of Schutt's injury. The jury was not instructed that assumption of the risk is a defense, or even relevant, to Green's claims.

Some Texas appellate courts have discussed the "competitive sports doctrine."[13] Under this doctrine, participants in competitive contact sports may recover damages from injuries caused by other participants only if that other participant intentionally or recklessly—not merely negligently—caused the injury.[14] But nonparticipants such as sponsors or those who maintain equipment or facilities do not share in this reduced scope of potential liability.[15] The competitive sports doctrine therefore was not a defense available to Schutt in this case. Although there were references to the dangerous nature of football

---

[12] *Jackson v. Axelrad*, 221 S.W.3d 650, 654 (Tex. 2007) (citing *Farley ex rel. Ballman v. M M Cattle Co.*, 529 S.W.2d 751, 758 (Tex. 1975)).

[13] *E.g.*, *Moore v. Phi Delta Theta Co.*, 976 S.W.2d 738, 741 (Tex. App.–Houston [1st Dist.] 1998, pet. denied); *Hathaway v. Tascosa Country Club, Inc.*, 846 S.W.2d 614, 616-17 (Tex. App.–Amarillo 1993, no writ); *Connell v. Payne*, 814 S.W.2d 486, 488-89 (Tex. App.–Dallas 1991, writ denied).

[14] *Moore*, 976 S.W.2d at 741

[15] *Id.* at 742 (citing *Connell*, 814 S.W.2d at 488).

No. 07-10208

in the presence of the jury, including in the closing argument, there was no discussion of the competitive sports doctrine in the presence of the jury and no suggestion in the jury instructions that Schutt could only be liable for intentional or reckless action.

**B**

Green contends that the district court erred by permitting Schutt to introduce evidence that Schutt complied with industry standards set by the National Operating Committee on Standards for Athletic Equipment (NOCSAE) and that NOCSAE is of the view that no football helmet is capable of protecting against neck injuries. This evidence was inadmissible, Green asserts, because compliance with industry custom is not a defense to a products liability design defect claim based on the Texas Supreme Court's decision in *Boatland of Houston, Inc. v. Bailey*[16] and this court's decision in *Carter v. Massey-Ferguson, Inc.*[17]

Green's arguments fail for two reasons. First, Richard Stalnacker, Green's own expert, relied upon NOCSAE's testing standards in his expert report and as reference material when he tested helmets to determine if an alternate design was feasible. At trial, Green elicited several statements from Stalnacker about NOCSAE's history and mission, and about NOCSAE's testing standards. Green may not complain about Schutt's citation to NOCSAE standards when Stalnacker also cited and relied upon those standards.

Second, *Boatland of Houston* does not categorically preclude evidence of industry standards in product liability cases. Instead, it holds: (a) since a manufacturer's level of care is irrelevant in a products liability action, evidence that the manufacturer complied with industry standards is also irrelevant if it

---

[16] 609 S.W.2d 743 (Tex. 1980).

[17] 716 F.2d 344, 349 (5th Cir. 1983).

No. 07-10208

is introduced for the purpose of showing that the manufacturer took reasonable care in the design of its product; but (b) evidence of industry standards is relevant if offered to rebut the plaintiff's attempt to prove that a safer design was technologically possible and economically feasible.[18] The record reflects that Schutt's use of NOCSAE standards falls into the latter category. Schutt relied upon NOCSAE's standards to rebut Green's attempt to prove that a safer alternative design was feasible. Evidence that NOCSAE has concluded that no feasible football helmet can protect players' necks is relevant to the alternative design element of a design defect case.

Green argues that testimony that the Schutt DNA helmet "complied" with NOCSAE standards confused the jury by suggesting that the helmet's head and brain protection were relevant to the helmet's ability to protect the neck. But the record does not support this contention. The transcript pages Green cites are: (a) testimony from Robert Cantu, a neurosurgeon and vice president of NOCSAE, that no NOCSAE-approved helmets (which include all helmets in use in high school football) would have offered any greater protection against this injury than the Schutt DNA helmet did; (b) testimony from Peter Halstead, a biomechanical research scientist and technical advisor to NOCSAE, that all football governing bodies in America (such as the NCAA, the NFL, and the National Federation of State High Schools) require that helmets used in their games comply with NOCSAE standards, and that NOCSAE had studied the feasibility of helmet designs that could protect the neck and found that all alternative designs were not feasible; and (c) testimony by Kenneth Nimmons, executive vice president of Schutt, that Schutt helmets comply with NOCSAE standards. None of this testimony was likely to confuse the jury about the issues

---

[18] *See Boatland of Houston, Inc.*, 609 S.W.2d at 748-49; *see also Carter*, 716 F.2d at 348 (holding that "evidence of industry custom is relevant to the ordinary user's expectations" and relevant to the risk–utility determination in Texas design defect claims).

in the case.   Further, Green was able to cross-examine the witnesses on NOCSAE's current and historical statements on neck protection.  When cross-examining defense witness Halstead, Green suggested Halstead was "tell[ing] this jury [that if] this helmet meets NOCSAE, it's perfectly safe"; Halstead disagreed: "No, sir, I wouldn't [say that]. . . . I would tell you that the NOCSAE standard does not have provisions for testing the helmet's ability to protect the neck."   Thus even if there had been initial confusion from the mention of compliance with NOCSAE standards, Green's cross-examination allowed him to clarify the issues and his theory of the case.

Green also argues that the probative value of the evidence on the NOCSAE standards was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," citing Federal Rule of Evidence 403.  But Green does not offer any explanation for this argument—there are no citations to case law or the record—and the record does not support it.

## C

Green asserts that the district court erred by denying his motion in limine seeking to exclude certain types of statistical evidence.  Green cites *Rodriguez v. Crown Equipment Corp.*[19] for the principle that we require "a showing of substantial similarity before admitting evidence of other incidents" and that without such a showing, "other incident testimony simply fails to meet the test of relevancy."   Green argues that defense witness Robert Cantu referred to statistical data without first establishing that the sources for the data were substantially similar to the facts of Green's case.

---

[19] 923 F.2d 416, 418 (5th Cir. 1991).

No. 07-10208

The statistical data Cantu mentioned on the transcript pages Green cites include: (a) a survey of every catastrophic head and neck injury occurring in football in the United States each year, and (b) a 1997 NOCSAE report of catastrophic neck injuries in football occurring from 1977 through 1989 showing that over 70% of such injuries happened when the tackler's head was down. Green argues that there was no evidence about the type of helmet, nature of the play, or type of injury involved in these other incidents, so there was nothing to establish the reports' relevance to Green's injury.

Substantial similarity does not require an exact match. Similar to the situation in *Jackson v. Firestone Tire & Rubber Co.*,[20] on which the *Rodriguez* court relied, a court would impose an overly "narrow and unrealistic" view of relevance[21] if it prevented Schutt from introducing any evidence of football injuries except those in which the football helmet, nature of the play, and type of injury were identical to those in Green's injury. The data in the reports was relevant to Schutt's defense that the method of tackling, rather than the design of the helmet, was the cause of Green's injury. And the data pool is substantially similar to Green's injury in that it involves the same sport played under the same or similar rules with similar equipment, resulting in the same rare injuries. These similarities are substantial enough to make the data relevant to Schutt's defense. The district court did not abuse its discretion by allowing this data.

**D**

Green asserts that the district court erred by allowing Schutt to elicit testimony on cross-examination of Brad Thiessen, Green's football coach, that the high school continued to use the Schutt DNA helmet after Green's injury.

---

[20] 788 F.2d 1070 (5th Cir. 1986).

[21] *Id.* at 1082-83.

Green asserts that this statement was used "to prove non-defect" and that it was irrelevant, improper opinion testimony, and highly prejudicial, and therefore should have been excluded under Federal Rules of Evidence 401, 402, 403, 701, and 702.

Any error was harmless. The testimony at issue was a single question ("You're still using this helmet today. Correct?") and answer ("Yes.") that took place in the eight day trial. Schutt never referred to the question again, and never argued that the school's continued use of the helmet implied anything about whether it was defective. The primary sources of evidence for both Green's and Schutt's theories of the helmet's design defect *vel non* were experts who testified about the mechanics of compressive neck injuries and of helmet design.

**E**

Schutt's expert witnesses Joseph Torg, Robert Cantu, Peter Halstead, and James McElhaney testified that Green's tackling technique contributed to his injury and that football helmets cannot protect the neck. Green contends these opinions were not based upon scientific principles and methods, and were unreliable, cumulative, and irrelevant. These witnesses—three medical doctors and one biomechanical engineer—testified as to the physical effects and biomechanics of the manner in which Green executed the tackle and their opinions regarding design of a helmet to prevent injury in these circumstances. Each had extensive experience studying neck injuries sustained by football players. Their expert knowledge was sufficiently established to permit such testimony.

**F**

The district court declined to exclude a bar graph offered at trial by Schutt that compared its in-house test scores of its DNA model helmet and the Air Power helmet, which Green contended was an alternative and safer helmet.

No. 07-10208

Green acknowledges that the graph was produced 30 days before trial during the exchange of trial exhibits. Green contends, however, that Schutt refused to produce the underlying data and had refused to produce any testing records for the Air Power helmet during discovery.

Schutt countered in the district court that Green's expert had charted testing of the Air Power helmet in other cases. Schutt additionally argues on appeal that Green was required, and failed, to object within 14 days after receiving this trial exhibit, pursuant to Rule 26(a)(3)(C) of the Federal Rules of Civil Procedure.

We review the district court's ruling for an abuse of discretion. Based on the record before us and the conflicting evidence of prejudice, we cannot say that the district court abused its discretion.

## G

The district court overruled Green's objection to evidence that both NOCSAE and the National Football Federation[22] (NFHS or Federation) have stated in published literature that football helmets cannot protect against neck injuries.

Green cites no transcript pages for these alleged evidentiary errors. In its appellate brief, Schutt cites a portion of the direct examination testimony of Artemio Ontiveros, an assistant coach of Green's football team. Schutt referred to and subsequently admitted the NFHS rulebook that governed the scrimmage game. Green objected on the basis of relevance (with no further detail) and was overruled. However, Green now contends on appeal that the NOCSAE and NFHS evidence had no scientific basis and was hearsay. Green's objection based on relevance did not preserve these contentions for appeal.

---

[22] The parties and witnesses occasionally referred to this entity by slightly different names. The correct name and acronym for this organization appears to be the National Federation of State High School Associations (NFHS). *See* http://nfhs.org.

No. 07-10208

## V

Green challenges several rulings of the district court excluding evidence he offered.

## A

The district court excluded a 1973 version of NOCSAE's standards. According to the document's preamble, NOCSAE sought to develop a football-helmet-test standard that would "improve upon the protection afforded by helmets to prevent both head and neck injuries." Schutt moved the district court to exclude this evidence under Federal Rule of Evidence 403, arguing that it was likely to confuse the jury since the language at issue provides only an aspiration and is not a scientific finding. Schutt further contended that more recent literature, as well as NOCSAE's current standard, rejects this aspiration. The district court granted Schutt's motion. Given the document's aspirational tone and age, the more recent medical literature, and NOCSAE's change in position, the district court did not abuse its discretion.

## B

The district court excluded a design safety memorandum that had been prepared for Bike Athletic Company in 1985. The document contains a list of 14 broad guidelines for designing safe athletic equipment, such as "exceed all standards" and "consider safety throughout the design." Although the document was not prepared for Schutt, Schutt's director of research for the DNA helmet was an employee at Bike Athletic Company in 1985 and received the memorandum there. Green argued that the document put this person on notice of certain safety requirements for helmet design. Schutt contended that the document was irrelevant and moved the court to exclude it under Rule 402. The district court granted Schutt's motion. "In cases involving strict liability for defective design, liability is determined by the product's defective

13

condition . . . ."[23]   Green's cause of action was based on strict liability for defective design. Although the document at issue may have shown "notice" to Schutt of foreseeable risks, as Green argues, it does not tend to establish that a defect existed. The district court did not abuse its discretion.

## C

Green also claims that the district court erred in preventing him from admitting a nine-page published paper on helmet safety. The article, which was published in a scientific journal in 1978, explains the methodology and results of a helmet-safety test. It concludes that helmets can reduce the compressive force to the cervical spine, and that air-filled helmets provide better neck protection than padded helmets. Green's expert described the paper in great detail. He explained how the helmet-safety test was conducted and conveyed the paper's conclusions. He also quoted directly from the article. When Green attempted to admit the paper into evidence, Schutt objected that the article was irrelevant because it was nearly 30 years old, and that it was hearsay. The judge sustained these objections. Even if the district court erred in excluding the article, which we do not resolve, the error did not harm Green. Green's expert testified extensively about the article and conveyed to the jury all helpful and relevant information contained in it.

## D

Green received medical bills totaling $831,254.74, but Medicaid and other insurance providers settled the bills for $448,154.63. The district court ruled before trial that Green could only seek recovery for the $448,154.63 that was actually paid. The district court prevented Green from presenting evidence on the remainder of the amount initially billed. Green claims that this was error. Green's complaint relates only to damages; because the jury failed to find in

---

[23] *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749 (Tex. 1980).

No. 07-10208

Green's favor on any theory of liability, and we are not disturbing any of the liability determinations, we do not consider this contention.

**E**

In one sentence, Green asserts that the district court erred in denying his motion to strike a brief that Schutt filed prior to trial. Green has waived this argument by inadequately briefing it.[24] But even if Green had adequately briefed this argument, permitting the filing of this pretrial brief did not prejudice Green.

**VI**

Green challenges the charge and instructions to the jury. He must show that the "charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."[25] If the instructions contained an error, we still will not reverse if the record, taken as a whole, reflects that the instruction could not have changed the case's outcome.[26]

**A**

On appeal, Green contends that the district court "improperly commingled negligence principles with strict liability design defect principles" and "adopted more stringent standards than those required for strict liability claims under Texas law." Green's brief contains nothing more than these two statements. He cites no authorities, nor does he discuss the charge. Green has waived any argument by failing to brief it adequately.

He additionally contends that it was error to submit comparative fault to the jury and to refuse to instruct the jury that Green had no duty to discover the

---

[24] *See* FED. R. APP. P. 28(a).

[25] *See Pelt v. U.S. Bank Trust Nat'l Ass'n*, 359 F.3d 764, 766-67 (5th Cir. 2004) (quoting *Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir. 1997) (internal quotation marks omitted)).

[26] *Id.*

No. 07-10208

defective condition of the helmet. Here again, Green cites to no authorities other than the Texas Pattern Jury Charge. This is insufficient.

**B**

Schutt initially intended to contend at trial that Green assumed the risk of his injury. Green argues that the court erred in allowing Schutt to introduce evidence related to this defense and then failing to instruct the jury not to consider this evidence after Schutt abandoned its defense during the charge conference. Green cites no case law or other authorities, and this point has not been adequately presented.

\*       \*       \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

16