**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**February 9, 2004**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 03-10206

---

JOHN HENRY PELT; JANICE PELT

              Plaintiffs - Counter Defendants - Appellants

        v.

US BANK TRUST NATIONAL ASSOCIATION, formerly known as First
Trust Bank National Association, as Trustee under the
Pooling and Service Agreement, New Century Home Equity Loan
Trust, Series 1998-NC7;

              Defendant - Counter Claimant - Appellee

NEW CENTURY MORTGAGE CORPORATION

              Defendant - Appellee

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before KING, Chief Judge, and JONES and SMITH, Circuit Judges.

KING, Chief Judge:

Plaintiffs-Appellants John Pelt and Janice Pelt filed suit
against Defendants-Appellees U.S. Bank Trust National Association
("U.S. Bank Trust") and New Century Mortgage Corporation ("New
Century") seeking, <u>inter alia</u>, a declaration that Defendants had
violated various provisions of the Texas Constitution in
connection with the origination of Plaintiffs' home equity loan.
U.S. Bank Trust filed a counterclaim, seeking an order both

1

upholding the validity of the loan and authorizing a foreclosure of the property securing the loan.  After a jury trial, the district court entered judgment in favor of Defendants. Plaintiffs appeal, contending that the district court improperly instructed the jury on a controlling issue of Texas constitutional law.  For the following reasons, we AFFIRM.

## I.  BACKGROUND

In September 1998, Plaintiffs obtained a $240,000 home equity loan from New Century, secured by Plaintiffs' homestead located in Duncanville, Texas.  Plaintiffs ceased making payments on the loan in August 1999.  Subsequently, in February 2000, New Century filed an application in Texas state court for an order authorizing an expedited foreclosure of the lien securing the loan.  See TEX. R. CIV. P. 736.  In May 2003, Plaintiffs filed this diversity suit in federal district court, naming as Defendants both New Century and the current holder of the home equity loan, U.S. Bank Trust.[1]

In their complaint, Plaintiffs alleged that the home equity loan documents failed to comply with several of the requirements set forth in Article XVI, § 50(a)(6) of the Texas Constitution including, inter alia, § 50(a)(6)(Q)(v), which requires that the lender provide the borrower copies of all documents signed at the closing.  Thus, they sought both a declaratory judgment that the

---

[1]    This suit abated the state foreclosure action.  See TEX. R. CIV. P. 736(10).

loan was invalid and a judgment ordering Defendants to forfeit all principal and interest under the loan.  See Tex. Const. art. XVI, § 50(a)(6)(Q)(x) ("[T]he lender or any holder of the note . . . shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit. . . .").[2]  In response, U.S. Bank Trust filed a counterclaim seeking an order authorizing foreclosure of the property securing the loan.

Defendants also filed a motion for summary judgment on Plaintiffs' claims arising under the Texas Constitution and on U.S. Bank Trust's counterclaim.  In September 2002, the district court granted the motion in part and denied it in part, leaving for trial: (1) Plaintiffs' forfeiture claim under § 50(a)(6)(Q)(v) and § 50(a)(6)(Q)(x) and (2) the counterclaim for an order of foreclosure.  At trial, Plaintiffs presented evidence that, prior to the lawsuit, they did not receive copies of eight of the documents that they had signed in connection with the loan; however, Defendants' evidence suggested that unsigned copies of all loan documents were provided to Plaintiffs on the day of the closing and that copies of the signed documents were

---

[2]     Plaintiffs also alleged that New Century violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (2000), and that both Defendants violated the Texas Debt Collection Act, Tex. Fin. Code Ann. § 392 et seq. (Vernon 1998). But Plaintiffs withdrew both of these claims just before trial.

made available to Plaintiffs shortly thereafter.  After weighing the evidence, the jury returned a verdict against Plaintiffs. The district court then entered a judgment decreeing that the loan was valid and authorizing U.S. Bank Trust to foreclose on the property.  Plaintiffs then filed a motion for a new trial--claiming that the verdict was against the weight of the evidence, and that the court had erroneously charged the jury--which the district court denied in January 2002.  On appeal, Plaintiffs maintain that the district court erroneously instructed the jury regarding the meaning of the language in Article XVI, § 50(a)(6)(Q)(v) of the Texas Constitution.

## II. DISCUSSION

We review the district court's instructions to the jury under a two-prong standard of review:

> First, the challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.  Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.

Johnson v. Sawyer, 120 F.3d 1307, 1315 (5th Cir. 1997) (citation and internal quotation marks omitted).

Plaintiffs contend that the district court's supplemental instruction to the jury regarding Question No. 1 of the jury charge was erroneous.  Question No. 1 essentially asked the jury to decide whether Plaintiffs had proven that Defendants violated

4

Article XVI, § 50(a)(6)(Q)(v) of the Texas Constitution, which requires that "the lender, at the time the extension of credit is made, provide the owner of the homestead <u>a copy of all documents signed by the owner</u> related to the extension of credit" (emphasis added). Specifically, Question No. 1 inquired whether Plaintiffs had "prove[n] by a preponderance of the evidence that New Century, or someone on its behalf, failed to provide them a copy of all documents they signed related to the home equity loan at the time it was made[.]" On appeal, neither party argues that the wording of this question was either misleading or erroneous.

In the course of its deliberations, however, the jury expressed its confusion over the meaning of Question No. 1 by sending a handwritten note to the district court, which stated:

> Consider the following statement: "failed to provide them a copy of all documents they signed related to the home equity loan . . ."
> Does this statement in Question 1 require the lender to provide a "signed" copy of the documents? If unsigned documents were provided, would that meet the requirement of the Texas Constitution?

(ellipsis in original). Plaintiffs asked the court to respond to this query by informing the jury that "signed copies" of the documents were required by the Texas Constitution. Defendants disagreed and argued that if the lender had provided the homeowner with unsigned copies of the documents it had fulfilled its obligations under § 50(a)(6)(Q)(v). After considering these arguments, the district court delivered the following supplemental instruction to the jury over Plaintiffs' objection:

5

The Texas Constitution requires that "a copy of all documents signed by the owner" be provided. It does not state that the owner be provided "a signed copy." It does require the owner to be provided with a copy of any document that he or she signed at the time the home equity loan was made. You are further instructed to use your good judgment and common sense in deciding this question.

The jury subsequently found that Plaintiffs had not sustained their burden of proof on this claim.

On appeal, Plaintiffs contend that the district court erroneously instructed the jury that a lender may satisfy § 50(a)(6)(Q)(v) by providing unsigned copies of the home equity loan documents to the borrower. Although no case from either the Texas Supreme Court or any other Texas state court has interpreted § 50(a)(6)(Q)(v), we do not believe that the district court's supplemental instruction was an improper statement of the law. The Texas Supreme Court has repeatedly instructed that, in interpreting the Texas Constitution, courts must "rely heavily on its literal text and must give effect to its plain language" to assure that constitutional provisions are given "the effect their makers and adopters intended." Doody v. Ameriquest Mortgage Co., 49 S.W.3d 342, 344 (Tex. 2001); accord Stringer v. Cendant Mortgage Corp., 23 S.W.3d 353, 355 (Tex. 2000). Here, § 50(a)(6)(Q)(v) states that a lender must provide to the borrower a "copy of all documents signed by the owner"--it does not require, as the district court aptly pointed out in its supplemental instruction, that the owner be provided "a signed

6

copy" of each of these documents.  Instead, the phrase "signed by the owner" simply identifies which--of the numerous documents presented at the closing of the home equity loan--must be copied and given to the borrower: only those that the borrower actually signs in connection with the loan.  In other words, the provision does not further require that the documents be photocopied only after they are signed.

Nonetheless, Plaintiffs assert that the Texas courts' policy of construing statutes and constitutional provisions liberally in favor of homestead owners should influence our interpretation of § 50(a)(6)(Q)(v)'s language.  See, e.g., Andrews v. Sec. Nat'l Bank of Wichita Falls, 50 S.W.2d 253, 256 (Tex. 1932) ("The universal rule of construction is that homestead provisions of the organic law and statutes are to be liberally construed, for the purpose of effectuating the wise and salutary provisions thereof."); see also Rooms With a View, Inc. v. Private Nat'l Mortgage Ass'n, Inc., 7 S.W.3d 840, 847 (Tex. App.-Austin 1999, pet. denied) ("Homestead rights are intended to protect Texas families from destitution and homelessness and encourage feelings of independence . . . .  Courts should liberally construe homestead provisions in a manner that promotes that intended purpose." (citations and internal quotation marks omitted)).  While we agree that Texas law aims to protect the rights and

interests of homeowners,[3] we also note that the Texas Supreme

Court nevertheless has applied its general rules of

constitutional construction--including a heavy reliance on the

plain language of a provision--to other subsections of

§ 50(a)(6).  See, e.g., Doody, 49 S.W.3d at 346-47 (holding that

§ 50(a)(6)(Q)(x) provides lenders with the opportunity to cure

defects in all of the lender's obligations under the extension of

credit, even though the borrower had argued that this result

might provide an incentive for lenders to violate many of the

requirements initially); Stringer, 23 S.W.3d at 357 (reconciling

a conflict between the language of § 50(a)(6)(Q)(i) and

§ 50(g)(Q)(1) in a manner more favorable to lenders than to

borrowers, based on the plain meaning of these sections).

Moreover, we do not believe that interpreting § 50(a)(6)(Q)(v) to

allow a lender to copy the unsigned documents harms the borrower

in any way, since this provision still requires that the copies

given be accurate facsimiles of the loan documents.  That is, if

a document is altered before the borrower executes it at the

closing, then the lender does not comply with the Texas

Constitution unless it ensures that the borrower receives a copy

of the document that includes the alterations.  Therefore, we

---

[3]     For example, the provision in question is one of a
lengthy list of requirements and obligations that lenders must
fulfill to ensure that a home equity loan will not later be
subject to forfeiture.  See Stringer, 23 S.W.3d at 356-57
(discussing the requirements set forth in TEX. CONST. art. XVI,
§ 50(a)(6)).

8

conclude that the district court did not err when it instructed the jury that § 50(a)(6)(Q)(v) does not require lenders to provide the borrower with "a signed copy" of each document that the borrower signed at the closing.[4]

Finally, Plaintiffs argue, in the alternative, that we should reverse and remand for a new trial because the district court improperly allowed the jury to resolve a question of law. See Green Tree Acceptance, Inc. v. Wheeler, 832 F.2d 116, 118 (8th Cir. 1987) ("When a ground for the verdict should have been decided as a matter of law, reversal and a new trial are

---

[4] Plaintiffs also rely on the Regulatory Commentary on Equity Lending Procedures, an interpretive document drafted by several Texas agencies, to buttress their assertion that § 50(a)(6)(Q)(v) requires lenders to provide homeowners with copies of all "signed documents" related to the extension of credit. We recognize the persuasive value of this document, see Stringer, 23 S.W.3d at 357, but we do not believe that it supports Plaintiffs' position in this case. In the section interpreting § 50(a)(6)(Q)(v), the Regulatory Commentary paraphrases the constitutional language and suggests that, in the event that a document cannot be signed at closing, "the lender must provide the owner copies of these documents within a reasonable time after execution." OFFICE OF CONSUMER CREDIT COMM'R ET AL., REGULATORY COMMENTARY ON EQUITY LENDING PROCEDURES 10 (1998). This statement does not implicitly assume, as Plaintiffs contend, that the copies given to the borrower must bear the borrower's signature. Instead, the Regulatory Commentary simply recognizes that a lender might not be able, during the closing, to identify and provide copies of documents that the borrower might later sign in relation to the closing. Because § 50(a)(6)(Q)(v) only requires the borrower to provide copies of documents that are actually "signed by the owner related to the extension of credit," the borrower must be given time to provide copies of these extra documents after it becomes apparent that these documents fit this criterion. For the same reasons, Plaintiffs' reliance on the recent regulations adopted by the Texas Finance Commission is also unavailing. See 29 Tex. Reg. 96 (2004) (to be codified at 7 TEX. ADMIN. CODE § 153.22).

9

required . . . ."). Plaintiffs point to the final sentence of the supplemental instruction, in which the district court stated: "You are further instructed to use your good judgment and common sense in deciding this question." Because the jury had inquired about the meaning of § 50(a)(6)(Q)(v)'s language in its query to the court, Plaintiffs suggest that, by inviting the jury to use its own "judgment" in deciding this question, the district court allowed the jury to settle on its own interpretation of the constitutional provision.

We disagree. Viewed as a whole, the district court's supplemental instruction resolved the issue of constitutional interpretation. In response to the jury's inquiry--whether the Texas Constitution required the lender to provide "signed copies" of the loan documents, as opposed to unsigned copies--the district court clearly stated: "It does not state that the owner be provided 'a signed copy.'" This instruction, phrased in a manner that directly responds to the jury's query, demonstrates that the district court believed that providing copies of the unsigned documents satisfied the terms of § 50(a)(6)(Q)(v). Thus, the district court did not ask the jury to decide a question of law; rather, the jury was faced with the task of sifting through the conflicting testimony presented by the parties in this case and deciding whether, in fact, New Century met this constitutional requirement by providing Plaintiffs with a full set of the home equity loan documents in a timely fashion.

### III. CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.