# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 26, 2025

Lyle W. Cayce
Clerk

—————————

No. 24-60383

—————————

Nickolas Anthony Trabucco,

*Plaintiff—Appellant*,

*versus*

Andres Rivera,

*Defendant—Appellee*.

———————————————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:22-CV-132

———————————————————————————

Before Wiener, Douglas, and Ramirez, *Circuit Judges*.
Irma Carrillo Ramirez, *Circuit Judge*:

A jury agreed with Plaintiff-Appellant Nickolas Trabucco that police officer Defendant-Appellee Andres Rivera had used excessive force against him but found that the officer was still entitled to qualified immunity. Trabucco moved for judgment as a matter of law or, in the alternative, a new trial, and the district court denied his motion. We AFFIRM.

I

On July 7, 2021, Trabucco parked at a gas station in Hernando, Mississippi, where Rivera was filling up his patrol car. Rivera saw Trabucco

drive up, finished filling up his car, and then walked over to the driver's side of Trabucco's car. The gas station's surveillance camera recorded the interaction.

Rivera spoke to Trabucco, who remained in the car, for about thirty seconds. Trabucco then opened the car door, stepped out, and walked towards the back of his car. What happens next is partially obscured by Trabucco's vehicle and disputed. At trial, Trabucco testified that Rivera "grabbed [his] arm and spun [him] around and took [him] to the ground." He thought that Rivera had told him to walk to the back of his car; he was not intending to flee. Rivera testified that he asked Trabucco multiple times to hand over his driver's license and get out of his car. When Trabucco finally got out of the car, Rivera grabbed Trabucco's arm but he "jerked his arm and pushed [Rivera's] arm away. Trabucco then "attempted to flee," but Rivera tackled him to the ground. Rivera's "intention was to get . . . handcuffs on [Trabucco]," but he lost control of him when Trabucco "twist[ed] away from [him]" and "stood [them] up."

After a few seconds, Rivera and Trabucco are again visible on the camera footage. Rivera and Trabucco stand up, and Rivera restrained Trabucco by gripping him under his left shoulder. Trabucco struggled until Rivera pushed him away. Once he regained his balance, Trabucco turned to face Rivera, waved his arms, and yelled at him. Rivera pulled out his taser and pointed it at Trabucco, who jumped back but continued yelling and waving his arms. Trabucco testified that Rivera said nothing, but Rivera testified that he ordered Trabucco to get on the ground and on his stomach. While still yelling, Trabucco kicked off one of his shoes towards Rivera, knelt, and brought his hands towards the back of his head. According to a cell phone video, Trabucco yelled that he "did nothing wrong" while moving a few steps forward on his knees. Rivera continued approaching Trabucco until he

shot Trabucco with the taser. Trabucco fell forward and rolled back and forth face down on the ground. He remained face down on the ground with his hands behind his back while Rivera called for backup. Trabucco was arrested and taken to jail.[1]

Trabucco sued Rivera under 42 U.S.C. § 1983, arguing that the amount of force Rivera used in arresting him was unreasonable and excessive under the Fourth Amendment. Trabucco moved for summary judgment, the district court denied Trabucco's motion, and the case proceeded to trial before a jury. After the close of evidence, Rivera moved for a directed verdict, and Trabucco "re-urge[d] [his] motion for summary judgment." The district court denied both motions, stating that "it's a call the jury should make in this case, particularly since there's a disagreement as to the facts." On October 18, 2023, the jury found that Rivera had used excessive force against Trabucco but that he was still entitled to qualified immunity.

The district court entered a final judgment on October 23, 2023. Trabucco moved for judgment as a matter of law, or in the alternative, for a new trial. The district court rejected Rivera's argument that Trabucco had waived his argument by failing to move for judgment as a matter of law before the verdict, finding that Trabucco's re-urging of his motion for summary judgment was "sufficient to reserve [his] procedural rights." Nevertheless, it denied Trabucco's motion. Trabucco now appeals.

---

[1] Trabucco was charged with a seatbelt violation, reckless driving, resisting arrest, disorderly conduct, and driving under the influence. All charges other than driving-under-the-influence charge were dismissed. Trabucco pled guilty to that charge and, "[b]y entering a non-adjudication agreement on the DUI, all charges ended up being dismissed, including the DUI once Trabucco successfully completed the terms of his non-adjudication."

II

Trabucco first challenges the denial of his motion for judgment as a matter of law.

A

We must first decide whether Trabucco waived his right to challenge the sufficiency of the evidence on appeal. *See Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238 (5th Cir. 2001). Rather than move for judgment as a matter of law, Trabucco "re-urged [his] motion for summary judgment" at the close of evidence.

Federal Rule of Civil Procedure 50 governs judgment as a matter of law in a jury trial. Challenges to the sufficiency of the evidence must be raised in a Rule 50(a) motion for judgment as a matter of law before submission of the case to the jury. Fed. R. Civ. P. 50(a). If the trial court does not grant the motion, the movant may renew its request after entry of judgment. Fed. R. Civ. P. 50(b). But a party that fails to move for judgment as a matter of law also waives its right to file a renewed Rule 50(b) motion and waives its right to challenge the sufficiency of the evidence on appeal. *See Flowers*, 247 F.3d at 238; *see also U.S. ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 960 (5th Cir. 1998) ("A party that fails to move for judgment as a matter of law under Rule 50(a) on the basis of insufficient evidence at the conclusion of all of the evidence waives its right to file a renewed post-verdict Rule 50(b) motion, and also waives its right to challenge the sufficiency of the evidence on appeal.").

"This Court has not required strict compliance with Rule 50[] and has excused technical noncompliance where the purposes of the requirement have been satisfied." *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1244

(5th Cir. 1997). Technical noncompliance is "gauged by whether the purposes of the rule are satisfied." *Flowers*, 247 F.3d at 238 n.7 (quoting *Polanco v. City of Austin,* 78 F.3d 968, 974 (5th Cir. 1996)). Those purposes are met when "the motion sufficiently alerted the court and the opposing party to the sufficiency issue." *Polanco*, 78 F.3d at 975. In those cases, the "court may find a de minimis departure and weigh the evidence." *Flowers*, 247 F.3d at 238 n.7.

Here, Trabucco satisfied "the purposes of the [Rule 50] requirement[s]." *Greenwood*, 111 F.3d at 1244. He "re-urged [his] motion for summary judgment," in which he had argued that "Rivera resorted to . . . overwhelming force" even though Trabucco was not a threat and was not attempting to evade arrest. Trabucco bolstered his motion during trial, pointing to Rivera's testimony that "[h]e did not perceive Mr. Trabucco to be a physical threat." The facts, Trabucco concluded, "are clear that this force was unnecessary and excessive" and that "[Rivera is] not entitled to qualified immunity." Even though he did not request Rule 50(a) relief outright, Trabucco's argument "alerted the court and the opposing party to [two specific] sufficiency issue[s]." *Polanco*, 78 F.3d at 975. Indeed, the district court acknowledged that it had the chance to consider Trabucco's challenge, finding that "it's a call that the jury should make in this case, particularly since there's disagreement as to the facts." Accordingly, the "court [could] find a de minimis departure and weigh the evidence." *Flowers*, 247 F.3d at 238 n.7.

B

We next consider Trabucco's arguments as to the evidence. This court reviews *de novo* the denial of a renewed motion for judgment as a matter of law but "appl[ies] the same legal standard as the district court." *Baisden*

*v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012). "A party is only entitled to judgment as a matter of law on an issue where no reasonable jury would have had a legally sufficient evidentiary basis to find otherwise." *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019) (citing FED. R. CIV. P. 50(a)(1)).

"[B]ut our standard of review with respect to a jury verdict is especially deferential." *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016) (citation modified). We draw all reasonable inferences in the light most favorable to the verdict. *Westlake Petrochems., L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 239 (5th Cir. 2012). This court "cannot reverse a denial of a motion for judgment as a matter of law unless the jury's factual findings are not supported by substantial evidence." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) (quoting *Am. Home Assurance Co. v. United Space All., LLC*, 378 F.3d 482, 488 (5th Cir. 2004)). That is, "we will reverse the district court's denial 'only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable juror could return a contrary verdict.'" *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 482 (5th Cir. 2008) (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir.2008)).

1

"The defense of qualified immunity protects state officials from civil suit and liability when they could have reasonably believed that their actions were legal." *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. Sept. 23, 2024) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). It "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555

U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (citation modified) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)). A state official is entitled to qualified immunity unless: (1) the plaintiff alleged a violation of a constitutional right; and (2) that right was "clearly established" at the time of the alleged violation. *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Pearson*, 555 U.S. at 232).

For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) ("Batyukova must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" (citing *Mullenix v. Luna*, 557 U.S. 7, 11 (2015)). Although this does not mean that "a case directly on point" is required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "[T]here [also] can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Batyukova*, 994 F.3d at 726 (quoting *D.C. v. Wesby*, 583 U.S. 48, 64 (2018) (citation modified)).

No. 24-60383

2

Drawing all inferences in favor of the verdict, Rivera's decision to tase Trabucco was not unreasonable in light of clearly established law.[2] Trabucco argues that the unlawfulness of Rivera's tasing was established by *Trammell v. Fruge*, 868 F.3d 332 (5th Cir. 2017)[3] and *Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017). While this case shares some similarities with those cases, there are significant differences.

In *Trammell*, the Round Rock Police Department received a call about a person who crashed a motorcycle and was believed to be intoxicated. 868 F.3d at 336. Fruge, the first officer to arrive at the scene, saw Trammel standing next to a parked motorcycle and asked him to step away from it. *Id.* Trammel did not acknowledge Fruge's first request to step away from the motorcycle, and he responded, "What?" to Fruge's second request. *Id.* He complied with Fruge's third request. *Id.* Although he told Fruge that he would not answer his questions, he remained calm during their conversation. *Id.* at 337. Fruge then grabbed Trammel's right arm as he told him to put his arms behind his back. *Id.* Trammel pulled back and told Fruge that it hurt and not to grab him there; another officer grabbed Trammel's left arm, but Trammel again pulled it away. *Id.* Fruge executed a knee strike on Trammel's right thigh, and another officer put Trammel in a headlock as three officers

_____

[2] In his brief, Trabucco appears to argue that both the tackle and the tasing constituted unreasonable and excessive uses of force. Trabucco, however, addressed only the tasing in his motion for judgment as a matter of law. We will not consider his arguments as to the tackle because "[a] party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

[3] In *Trammell*, the court used both "Trammel" and "Trammell" to refer to the plaintiff in that case.

pulled Trammel to the ground. *Id.* This court reversed summary judgment in favor of the officers, noting that the law at the time of Trammel's arrest "clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." *Id.* at 343.

*Trammell* did not settle "beyond debate" whether Rivera's use of force was constitutionally excessive. *al-Kidd*, 563 U.S. at 741. First, "only three seconds elapsed between . . . [the] initial request that Trammel place his hands behind his back and when [the officers] tackled Trammel." *Trammell*, 868 F.3d at 342. From that, "a reasonable jury could infer that the officers used very little, if any, negotiation before resorting to physical violence, and that the officers' conduct did not constitute the required 'measured and ascending' actions calibrated to Trammel's conduct." *Id.* (citation modified) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012)). Here, Rivera spoke to Trabucco for at least 30 seconds while he was still in his car, and then another 30 seconds or so elapsed before Rivera tased Trabucco. Rivera and his expert witness, John Tisdale, also testified that Rivera had proceeded through several steps in the use-of-force continuum before tasing Trabucco. Second, Trammel "remained calm throughout [the] interaction." *Trammell*, 868 F.3d at 337. Rivera, however, testified that Trabucco was "irate" and "loud" from their first interaction, so much so that he could not answer Trabucco's questions or explain what was happening. Finally, Trammel did not attempt to flee. *Trammell*, 868 F.3d at 337. But Rivera testified that he "did not know what [Trabucco] was about to do" when he lifted his knees up off the ground while he was kneeling. He thought "[Trabucco] was going to continue something, whether he was going

to get up and continue to scream and run in the store or continue to fight with me."

*Hanks*, 853 F.3d at 741–42, also offers little support for Trabucco's argument that the district court erred. In that case, an officer stopped Hanks and ordered him to "step out of the vehicle and come to the back." 853 F.3d at 742. After arguing for about a minute, Hanks eventually walked behind the vehicle, placed his hands on the trunk, and put his hands behind his head. *Id.* The officer then ordered Hanks to "go to [his] knees" as he stood behind Hanks with the taser drawn. *Id.* Hanks asked whether he was under arrest, but the officer only repeated his command. *Id.* With his hands behind his back, Hanks then "made a small lateral step with his left foot." *Id.* The officer "rushed towards Hanks and administered a blow to Hanks's upper back or neck," knocking him onto the trunk and then to the ground. *Id.* at 743. This court found that Hanks's resistance had been "'at most, passive,' . . . consist[ing] chiefly of remaining on his feet for about twenty seconds" after the order to kneel. *Id.* at 746 (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam)). Hanks's "small lateral step . . . was [also] not accompanied by any obvious signs of violence or flight," nor did Hanks "turn his body or move his hands." *Id.* Finally, it was clearly established that an officer cannot "abruptly resort[] to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." *Id.* at 747.

Likewise, *Hanks* did not settle whether Rivera's use of force was constitutionally excessive. First, Hanks offered no physical resistance. *Id.* at 742–43. But Rivera testified that Trabucco jerked his hand away when he tried to put him in handcuffs, he was "tussling" while Rivera tackled him and

attempted to handcuff him, and he refused to get on the ground when Rivera pointed his taser at him. Second, Hanks did not attempt to flee. Rivera testified, however, that he thought "[Trabucco] was going to continue something, whether he was going to get up and continue to scream and run in the store or continue to fight with me." Third, Hanks was blindsided by an abrupt and unwarned blow to his back. *Id.* at 743. But Trabucco testified that he saw the taser, and Rivera testified that he only tased him after Trabucco failed to comply with numerous orders. Finally, a police investigation found that Hanks was "compliant," that the officer's blow was unreasonable, and that "a Taser Deployment" might have been reasonable. *Id.* at 743, 749 n.10. By contrast, Rivera's superiors did not find that he had acted inappropriately. Trabucco also pleaded guilty to a driving-under-the-influence charge.

These multiple factual distinctions matter because "[e]xcessive force claims are necessarily fact-intensive" and turn on "the facts and circumstances of each particular case." *Id.* at 745 (citation modified). The law here is not "*so* clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately." *Salazar v. Molina*, 37 F.4th 278, 285 (5th Cir. 2022) (quoting *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019)). This court has even acknowledged that "[i]t is unclear at what point passive resistance becomes the sort of active resistance which justifies force." *Trammell*, 868 F.3d at 341. *Trammell* and *Hanks* did not settle "beyond debate" whether Rivera's use of force was constitutionally excessive.

The district court did not err in denying Trabucco's motion for judgment as a matter of law.

11

No. 24-60383

III

Trabucco next contends that the district court made various errors in instructing the jury. This court "review[s] challenges to jury instructions for abuse of discretion and afford[s] the trial court great latitude in the framing and structure of jury instructions." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 431–32 (5th Cir. 2022) (quoting *Young v. Bd. of Supervisors*, 927 F.3d 898, 904 (5th Cir. 2019)).

A

Trabucco first argues that the district court erred because it included language from a non-analogous case—*Salazar v. Molina*—without factual context.[4] He argues that this case is distinguishable because, unlike the plaintiff in *Salazar*, Trabucco was not a threat to Rivera. According to Trabucco, "[i]t makes no sense that a *court* deciding qualified immunity would obviously distinguish a non-analogous case, but that a *jury* would be instructed on the holding of a non-analogous case when tasked with deciding the same issue."[5]

On appeal, a party challenging jury instructions "must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the instructions properly guided the jury in its deliberations." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 291–92 (5th Cir. 2019) (quoting *Pelt v. U.S. Bank Tr. Nat. Ass'n*, 359 F.3d 764, 767 (5th Cir. 2004) (citation modified)). This

---

[4] This instruction quotes language from *Salazar* citing *Escobar v. Montee*, 895 F.3d 387 (5th Cir. 2018), another case that Trabucco argues is "non-analogous."

[5] Trabucco invites this court to expand upon its rulings in *Salazar* and *Escobar*, arguing that "it would be helpful for this court to clarify that [these holdings are] based on the extreme levels of resistance and danger identified" in these cases. We decline to do so because, as Trabucco points out, it is not required to resolve this case.

court "will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law." *U.S. v. McKinney*, 53 F.3d 664, 676 (5th Cir. 1995). But even if the instructions are erroneous, this court will not reverse if it determines, "based upon the entire record, that the challenged instruction could not have affected the outcome of the case." *Pelt*, 359 F.3d at 767 (quoting *Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir. 1997)).

Trabucco's arguments are unconvincing. In challenging the instruction, he focuses on language from *Salazar* that "the relevant inquiry is whether—despite the appearance of unambiguous surrender—an officer [would] have reason to doubt the suspect's compliance and still perceive a threat." *Salazar*, 37 F.4th at 283 (cleaned up). He argues that *Salazar* is "factbound," and that this language cannot be applied absent certain specific facts present in that case, i.e., that the arrestees were suspected of serious crimes and fled from the police. As noted, "an analysis of the clearly established prong [of qualified immunity] is fact-intensive." *Edwards v. Oliver*, 31 F.4th 925, 932 (5th Cir. 2022). Even so, Trabucco's argument that *Salazar* provides "little guidance for future cases" has no bearing on whether the instructions "taken as a whole . . . correctly reflect the issues and law." *McKinney*, 53 F.3d at 676. *Salazar* is still good law, and the instructions also include language from cases that Trabucco argues are "analogous," including *Hanks*. Trabucco disagrees with the outcome of this case, but he has not demonstrated "substantial and ineradicable doubt" that the instructions were correct and properly guided the jury. *See Puga*, 922 F.3d at 291 (citation modified). The district court did not abuse its discretion in including language from *Salazar* in the instructions.

No. 24-60383

B

Trabucco next argues that the district court erred in failing to include three instructions offering "factual context" from "analogous cases." According to Trabucco, "[a]sking a jury to decide qualified immunity on bare bones holdings from legal opinions without any factual context is asking laypersons to perform a court function without court resources."

The district court's refusal to give a requested instruction constitutes reversible error only if the instruction: (1) was a substantially correct statement of law; (2) was not substantially covered in the charge as a whole; and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim. *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1113 n.7 (5th Cir. 2021) (quoting *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004)). But "[a] court may consider a plain error in the instructions that has not been preserved." FED. R. CIV. P. 51(d)(2).

1

The first of Trabucco's proffered instructions includes language from *Cloud v. Stone*, 993 F.3d 379 (5th Cir. 2021). Trabucco contends that the district court refused to include an instruction that "[a]n arrestee pulling away from an officer's grasp alone does not justify an officer tackling him to the ground." This instruction, according to Trabucco, "would have provided the jury with the appropriate factual context for considering Rivera's takedown of Trabucco."

Although the language from *Cloud* is a "substantially correct statement of law," it does not meet the other prongs required for error. *Kanida*, 363 F.3d at 578. It is "substantially covered in the charge as a

14

whole," *id.*, which instructs jurors that "an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." The instructions also state that "a suspect does not pose an immediate threat where he unambiguously surrenders by, for example, placing his hands in the air and complying with the officers' commands." Because the jurors were instructed on these points, nothing suggests "that the failure to instruct the jury on the issue seriously impaired [Trabucco's] ability to present a given claim." *Kanida*, 363 F.3d at 578. The district court did not abuse its discretion in refusing to include this proposed instruction.

2

Trabucco's other two instructions include propositions from *Hanks*. Trabucco complains that the district court refused to include an instruction that, "[w]here a suspect is facing away from an officer and is presenting his empty hands and where the officer has a taser trained on the suspect's back, the officer should continue to verbally negotiate, including threatening force if necessary, rather than abruptly resorting to actual physical force." He also complains that the district court refused to instruct the jury that "[a] reasonable officer would not perceive active resistance or an attempt to flee where a suspect takes a small, lateral step, and the step is not accompanied by any obvious signs of violence or flight, and where the suspect does not turn his body or move his hands, which are visible."

No. 24-60383

Because Trabucco did not object to the failure to include these instructions, their omission is reviewed for plain error.[6] *Jimenez v. Wood Cnty.*, 660 F.3d 841, 845 (5th Cir. 2011) (en banc). Under this standard, a party must show: (a) error; (b) that is plain; (c) that affects substantial rights; and (d) that if left uncorrected would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Taita Chem. Co., Ltd. v. Westlake Styrene, LP*, 351 F.3d 663, 668 (5th Cir. 2003).

Here, there is no such error. The omitted instructions illustrates the broad propositions that officers should avoid using force with arrestees: (a) who do not pose an immediate threat or a flight risk; and (b) who are offering passive resistance or no resistance at all. The instructions submitted to the jury reflected these propositions, albeit not in the specific language that Trabucco requested. For example, the instructions stated that "an offer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force . . . with an individual who poses no immediate threat or flight risk [and] who engages in, at most, passive resistance." The instructions also stated that "it was excessive force 'when officers tased someone offering only

---

[6] Trabucco asserted during oral argument that he had made—and preserved—this objection. According to Trabucco, the district court judge stated that the parties' proposed instructions would be made part of the record. Trabucco contended that this "preserve[d] the record for what [he] argued should be included in the jury instructions given by the court." This court, however, has repeatedly held that the submission of proposed jury instructions alone is insufficient to preserve an objection on appeal. *See, e.g., Taita Chem. Co., Ltd. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2003) ("Furthermore, submission of an alternative instruction does not necessarily preserve error for appeal. The proposed instruction must make one's position sufficiently clear to the court to satisfy Rule 51's objection requirement.") (citation modified); *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995) ("Although Kelly submitted a proposed jury instruction . . . that the district court subsequently rejected, we do not find that these proposals made Kelly's position sufficiently clear to the court to satisfy Rule 51's objection requirement.").

passive resistance or no resistance at all.'" The district court did not err in refusing to include the instruction.

## C

Trabucco challenges the district court's refusal to include an instruction that "[w]here the violation of a constitutional right is obvious, there need not be a materially similar case for the right to be clearly established." Because Trabucco did not appear to object to the failure to include this language, its omission is also reviewed for plain error. *See Jimenez*, 660 F.3d at 845.

Again, there is no error. The inclusion of this language presupposes that the instructions contain fact-specific information about "materially similar case[s]" that the jurors then compared to the facts in this case. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). The instructions do not contain this information, however. Instead, they listed broad propositions discussing the facts and circumstances suggesting when qualified immunity is and is not appropriate. The jurors could (and did) use this language as guideposts to determine whether Rivera was entitled to qualified immunity. Trabucco fails to establish plain error.

## IV

Finally, Trabucco challenges the district court's denial of his motion for a new trial.

The denial of a Rule 59 motion for a new trial is reviewed for abuse of discretion. *Warner v. Talos ERT, L.L.C.*, 133 F.4th 412, 427 (5th Cir. 2025). "[O]ur standard of review here is even more deferential than our review of the denial of a motion for judgment as a matter of law." *Hidden Oaks Ltd. v.*

*City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1998). When reviewing the denial of a motion for new trial, "all the factors that govern our review of [the trial court's] decision favor affirmance, and we must affirm the verdict unless the evidence—viewed in the light most favorable to the jury's verdict—points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion]." *Baisden*, 693 F.3d at 504 (citation omitted).

Trabucco acknowledges that there is "no 'inherent conflict' between a finding of a constitutional violation and a finding of qualified immunity." But he argues that when this court has addressed a split verdict, it has upheld the holding only when there is "evidence of a reasonable belief by an officer which justified their mistakes." There is no such evidence here, according to Trabucco, because Rivera testified that he did not believe Trabucco was a threat or that he had a weapon. Given the "clearly established law," "the jury's verdict that Rivera made a reasonable mistake is unsupported by substantial evidence in the record."

There is evidence supporting Rivera's reasonable, but mistaken, belief that Trabucco was resisting and attempting to flee. *See, e.g., Mason v. Faul*, 929 F.3d 762, 766 (5th Cir. 2019) (per curiam) ("The jury must have found that although Officer Faul's belief that Mason posed and continued to pose a serious threat was incorrect, it was excusable or, at most, negligent in the heat and immediacy of the confrontation."). Rivera testified that Trabucco was "irate" and "loud" from their first interaction. He asked Trabucco multiple times for his driver's license, and he asked him multiple times to get out of his car. Trabucco was still screaming when he finally got out of his car, and when Rivera grabbed Trabucco's arm to put him in handcuffs, he jerked his arm away. Rivera testified that he tackled Trabucco to "control him," and that he believed that Trabucco was going to flee. When they were both

18

No. 24-60383

standing again, Rivera pointed his taser at Trabucco because he thought "[Trabucco] was going to continue something, whether he was going to get up or continue to scream and run in the store and continue to fight with me." He did not believe Trabucco was surrendering. Rivera testified that his superior officers reviewed this incident but did not write him up or discipline him. The district court did not abuse its discretion in denying Trabucco's motion for a new trial.

V

The district court's judgment is AFFIRMED.